**ELECTRICAL CONSTRUCTION &
MAINTENANCE COMPANY, INC.,**
Plaintiff-Appellant,

v.

**MAEDA PACIFIC CORPORATION,**
Defendant-Appellee.

No. 84–2087.

United States Court of Appeals,
Ninth Circuit.

Submitted April 2, 1985.
Decided June 25, 1985.

Mark E. Cowan, Arriola & Cowan, Agana, Guam, for plaintiff-appellant.

Lawrence L. Teker, Gayle, Teker & Schnabel, Agana, Guam, for defendant-appellee.

Before FARRIS, PREGERSON, and BEEZER, Circuit Judges.

PREGERSON, Circuit Judge.

Appellant subcontractor seeks damages based on breach of contract and promissory estoppel against appellee general contractor. Appellant appeals from the District Court of Guam's order of dismissal for failure to state a claim upon which relief could be granted. For the reasons stated below, we reverse and remand for further proceedings.

FACTS

Appellant Electrical Construction & Maintenance Company, Inc. (ECM), and appellee Maeda Pacific Corporation (Maeda) are construction contractors.

The government of Guam awarded appellee Maeda the prime contract on the Container Yard Expansion Project, a Guamani-an government construction project designed to expand and modernize its port facilities. Prior to bidding on the project, Maeda solicited proposals from various subcontractors to perform the electrical work. ECM was one of the subcontractors Maeda contacted. ECM alleges that when Maeda solicited ECM's bid, Maeda was told by ECM that it was unwilling to bid unless Maeda agreed to award ECM the subcontract if it were the lowest bidder on the subcontract and Maeda were the successful bidder on the prime contract. ECM further alleges that Maeda accepted ECM's proposal. The alleged agreement was oral. Maeda disputes that it made such a promise to ECM and that ECM was the lowest bidder. Although Maeda was awarded the prime contract, it chose not to hire ECM for the electrical subcontract.

DISCUSSION

A. *Standard of Review*

Appellant initially brought its claim in the Superior Court of Guam and then appealed to the Appellate Division of the District Court of Guam. The Appellate Division is a local territorial appellate court, the jurisdiction of which is determined exclusively by the Guam legislature. 48 U.S.C. § 1424(a). We must affirm a decision of the Appellate Division "on a matter of local law, custom or policy if the decision is based upon a tenable theory and is not inescapably wrong or manifest error." *Schenck v. Gov't of Guam*, 609 F.2d 387, 390 (9th Cir.1979).[1]

Review of a dismissal for failure to state a claim is limited to the contents of the complaint. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 581 (9th Cir.1983). To uphold such a dismissal, it must appear to a certainty that the law would not entitle plaintiff to relief under any set of facts that he

---

**1.** In *Churchill v. F/V Fjord (In re McLinn)*, 739 F.2d 1395 (9th Cir.1984) (en banc), we held that appellate review of a district court's decision concerning state law should be under the de novo standard of review. We see no need to apply this de novo standard in reviewing a territorial court's interpretation of local law. The Appellate Division of the District Court of Guam, as opposed to a Federal District Court, is a local court. For the same reasons that we defer to a state court's interpretation of state law, we apply the deferential standard of review set forth in *Schenck v. Government of Guam*, 609 F.2d 387, 390 (9th Cir.1979), in the instant case.

or she could prove. *Halet v. Wend Investment Co.*, 672 F.2d 1305, 1309 (9th Cir. 1982). Finally, we must accept all allegations of material fact as true and construe them in the light most favorable to the non-moving party. *North Star*, 720 F.2d at 581.

### B. *Consideration*

Appellant contends that the district court erred in concluding that appellant's amended complaint failed to state a claim for relief. We agree. The district court concluded that because a subcontractor is bound not to revoke a bid once relied upon by a prime contractor, there was no consideration in this case for ECM's promise to submit a bid on condition that Maeda accept the bid if it were the low bid and if Maeda were awarded the prime contract.

■■ Generally, the mere use of a subcontractor's bid by a general contractor bidding on a prime contract does not constitute acceptance of the subcontractor's bid and imposes no obligation upon the prime contractor to accept the subcontractor's bid. *See Merritt-Chapman & Scott Corp. v. Gunderson Bros. Engineering Corp.*, 305 F.2d 659 (9th Cir.), *cert. denied*, 371 U.S. 935, 83 S.Ct. 307, 9 L.Ed.2d 271 (1962); *Southern Cal. Acoustics Co. v. C.V. Holder, Inc.*, 71 Cal.2d 719, 456 P.2d 975, 79 Cal.Rptr. 319 (1969); *Williams v. Favret*, 161 F.2d 822 (5th Cir.1947). Moreover, ECM concedes that the mere solicitation of bids by a general contractor is not an offer and does not impose any obligations upon the general contractor. But ECM points out that even if it were obligated not to revoke its bid, it was not obligated to bid in the first place. ECM alleged in its complaint that it initially refused Maeda's solicitation to bid and only subsequently bid because Maeda promised that if ECM undertook the time and expense to prepare and submit an electrical subcontractor's bid, Maeda would award ECM the subcontract if its bid were the lowest. While this is an issue of first impression, we believe that where a subcontractor allegedly agreed to bid only after receiving the general contractor's promise to accept the bid if it were the low bid and if the general contractor were awarded the prime contract, there is consideration for the general contractor's promise. The consideration for Maeda's promise was ECM's submission of a bid—an act for which Maeda bargained and that ECM was not under a legal duty to perform. *See* Restatement (Second) of Contracts §§ 71–73 (any bargained for performance other than the performance of a legal duty owed to the promisor is consideration for a promise). *See also* A. Corbin, *Corbin on Contracts* § 123 (1963); J. Calamari & J. Perillo, *Contracts* 136–39 (2d ed. 1977).

While this does seem to be a case of first impression, at least one scholar has implied that an agreement such as that involved in the present case may be enforceable:

> A final point of interest is whether the prime and the sub could [create a binding contract requiring the prime to use the sub's services] by agreeing between themselves in advance that the sub would always get the subcontract from the prime bidder in a case where the prime used his bid to get the prime contract. Initially, the prime is not under any obligation to use the sub's bid (and the sub is under no obligation to make any bid), but if the prime should decide to use the sub's bid, then he is obligated to accept no other sub's bid for the same work, should he get the contract. *The chief problem here is finding consideration for the prime's promise to award the subcontract. Note that the subcontractor does not promise to make any bids for the prime to use.... The prime will be bound by his promise as to any bids submitted by the sub in reliance on it*, but ... he can revoke that promise as to future bids at any time without liability.

A. Corbin, *Corbin on Contracts*, § 24 at 50–51 (C. Kaufman Supp.1984) (emphasis added).

The Appellate Division overlooked ECM's contention that ECM submitted its bid in the first place because of Maeda's condi

tional promise, and the court erroneously assumed that ECM's promise not to revoke its bid was the sole consideration alleged in the present case. Specifically, the Appellate Division found that ECM provided insufficient consideration because once it submitted its bid to Maeda and Maeda relied upon that bid, ECM was precluded from withdrawing the bid under *Drennan v. Star Paving Co.*, 51 Cal.2d 409, 333 P.2d 757 (1958).

In *Drennan,* a subcontractor discovered a mistake in the preparation of a bid submitted to a prime contractor and then sought to revoke the bid after the prime contractor had used the sub's bid in submitting its own bid. The subcontractor had not reserved the right to revoke the bid. The California Supreme Court found the subcontractor liable under a theory of an implied promise not to revoke the bid. The present case is distinguishable from *Drennan.* ECM does not allege that it promised not to revoke its bid in consideration for Maeda's conditional promise to accept ECM's bid. Rather, ECM contends that it obtained a commitment from Maeda, before bidding on Maeda's project, that if ECM were to bid, Maeda would award ECM the subcontract if its bid were the lowest and if Maeda's prime bid were successful. *Drennan* did not involve the question whether submission of a bid in the first place, in contrast to a promise not to revoke a bid, can be adequate consideration for a conditional promise to accept the bid.

We find no authority for the proposition that ECM's submission of its electrical subcontractor's bid constituted insufficient consideration for Maeda's bargained for conditional promise to accept ECM's bid. ECM was under no legal obligation to submit its bid. To uphold a dismissal for failure to state a claim, it must appear to a certainty that the law would not entitle a pl*** ***f to relief under any set of facts ld be proved. *Halet,* 672 F.2d at ions omitted). Because the Ap- sion based its dismissal of int upon the untenable theo- consideration alleged by ed promise not to revoke

its bid, the Appellate Division's decision cannot be upheld on the grounds of absence of consideration.

## C. *Promissory Estoppel*

ECM contends that even if this court determines that no contract existed, ECM should be permitted to recover on a promissory estoppel theory.

The essence of the doctrine of promissory estoppel, as enunciated in section 90(1) of the Restatement of Contracts 2d, is as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Courts have adopted this rule and applied it in actions, such as the present, to enforce a subcontractor's bid. *See C & K Engineering Contractors v. Amber Steel Co., Inc.,* 23 Cal.3d 1, 6–8, 587 P.2d 1136, 1138–39, 151 Cal.Rptr. 323, 325–26 (1978); *Drennan,* 51 Cal.2d at 413–15, 333 P.2d 757.

The Appellate Division declined to consider whether the trial court erred in foreclosing relief on a promissory estoppel theory because ECM did not plead this theory and because it was not considered by the trial court. The Appellate Division was mistaken in this conclusion.

■ A party does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit. *American Timber & Trading Co. v. First National Bank of Oregon,* 690 F.2d 781, 786 (9th Cir.1982). Furthermore, "[i]t has long been established law that, in equity, a plaintiff is entitled to any relief appropriate to the facts alleged in the bill and supported by the evidence, even where he has not prayed for such relief." *Dann v. Studebaker-Packard Corporation,* 288 F.2d 201, 216 (6th Cir.1961) (citing *Bemis Bros. Bag Co. v. United States,* 289 U.S.

28, 34, 53 S.Ct. 454, 456, 77 L.Ed. 1011 (1933)). As Wright & Miller state:

> The complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory....
>
> ... The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.

5 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 1357, at 601–603 (1969). In the present case, the basis for the promissory estoppel claim arises out of the same facts as the breach of contract claim—the discussions between ECM and Maeda before ECM submitted its subcontractor's bid. In addition, in its amended complaint, plaintiff not only requested breach of contract damages, but requested "all such relief as may be just" as well.

Thus, appellant should have been permitted to assert a promissory estoppel claim at the time of trial, even if not specifically alleged in the complaint.

For these reasons, we reverse the District Court of Guam's order of dismissal for failure to state a claim, and remand to the district court with instructions that it remand to the Superior Court of Guam so that the superior court can hear appellant's claim for damages based on breach of contract and promissory estoppel on the merits.

REVERSED and REMANDED for further proceedings consistent with this opinion.