Kathy BROWN, Petitioner-Appellee,

v.

CIVIL SERVICE
COMMISSION, Respondent,

Department of Education and Territorial
Board of Education, Real Parties in
Interest-Appellant.

No. 84–2853.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 18, 1985.

Decided June 3, 1987.

David W. Dooley, Agana, Guam, for peti-
tioner-appellee.

Suzanne K. Horrigan, Richard G. Opper,
of Agana, Guam, for real parties in inter-
est-appellant.

Before SKOPIL, FLETCHER and
ALARCON, Circuit Judges.

SKOPIL, Circuit Judge:

The Department of Education ("DOE") appeals the decision of the Appellate Division of the District Court of Guam reinstating appellee Kathy Brown as a teacher on Guam. We affirm.

## I. GUAM EDUCATIONAL SYSTEM

In structuring its educational system, the Guam legislature established DOE, 17 G.C.A. § 3101 (1984), as a part of the executive branch. It also established a Board of Education ("Board"). 17 G.C.A. § 3102(a). The Guam legislature has delegated its constitutional authority to establish a merit system to a number of agencies, including the Board. 4 G.C.A. § 4105. The Board's merit system must be approved by the Civil Service Commission ("Commission") and executive order of the Governor. In 1973 the Board adopted rules and regulations regarding its personnel and the Governor approved those regulations in Executive Order 73–24.[1]

The Commission was also established by the Guam legislature. 4 G.C.A. § 4401. It is responsible for, among other things, appeals from administrative action to suspend or dismiss DOE employees. 4 G.C.A. § 4403; 4102(b). In 1972 the Commission adopted rules and regulations regarding appeals from agency decisions. The Governor approved and promulgated these regulations in Executive Order 72–19 and revised them in Executive Order 79–030.[2]

## II. FACTS AND PROCEEDINGS BELOW

Kathy Brown was a teacher on Guam, employed by the DOE. In 1981 there was a general strike in which Brown joined. Two days later, on January 14, 1981, DOE suspended Brown and on February 2 terminated her employment. In deciding to terminate Brown, DOE relied on Commission rules and regulations promulgated and approved by the Governor in Executive Order 79–030.

Thereafter, Brown appealed her termination to the Civil Service Commission of Guam. The Commission upheld the suspension and termination. On December 30, 1982 Brown filed a petition for writ of mandamus and preemptory writ in the Superior Court of Guam. On August 24, 1983 the Superior Court entered a judgment

---

1. Executive Order 73–24 states:

    WHEREAS, [4 G.C.A. § 4105] provides in part that Personnel Rules and Regulations shall be adopted by the Territorial Board of Education; and

    WHEREAS, [4 G.C.A. § 4105] further provides that such Rules and Regulations must be approved by the Civil Service Commission and promulgated by Executive Order; and

    WHEREAS, the Territorial Board of Education have adopted such Personnel Rules and Regulations and the Civil Service Commission has approved such Rules and Regulations;

    NOW, THEREFORE, I, Carlos G. Camacho, Governor of Guam, by virtue of the authority vested in me by section [4105] hereby order as follows:

    1. That the Personnel Rules and Regulations adopted by the Territorial Board of Education and approved by the Civil Service Commission, attached hereto, are hereby approved and promulgated.

    2. This Executive Order shall be effective June 29, 1973.

2. Executive Order 79–030 states in pertinent part:

    WHEREAS, section 4006, Government Code of Guam, provides that the Civil Service Commission shall adopt rules and regulations for matters relating to administrative appeals to the Civil Service Commission; and

    WHEREAS, on 19 May 1972, the Governor, at the recommendation of the Civil Service Commission, promulgated Executive Order 72–19 setting forth the rules and regulations on demotion, suspension, dismissal and appeal of such adverse actions to the Civil Service Commission; and

    WHEREAS, the current rules and regulations have been criticized as complicated, subject to conflicting interpretation; and

    \* \* \* \* \* \*

    WHEREAS, the Civil Service Commission has made some revisions on the current rules and regulations on adverse action with the intent of clarifying those areas where departments/agencies and employees have problems in applying said rules and regulations;

    \* \* \* \* \* \*

    NOW, THEREFORE, by virtue of the authority vested in me by the Organic Act of Guam, the rules and regulations attached hereto are hereby approved and promulgated as a standard policy for all employees covered in the said rules and regulations.

finding the suspension invalid, but upholding the termination.

Brown appealed to the appellate division of the district court of Guam. The court found both the suspension and termination invalid. It held DOE wrongfully terminated Brown because DOE relied on a set of rules and regulations it had never adopted as required by 4 G.C.A. § 4105. The Board had previously adopted the rules promulgated in Executive Order 73–24. The court reasoned that DOE therefore should have employed those rules rather than the Commission rules adopted and promulgated in Executive Order 79–030. It ordered Brown's reinstatement. DOE appeals.

## III. ISSUES ON APPEAL

### A. Standard of Review.

█ The parties dispute the standard of review. Resolution of this dispute will be determined by whether we are interpreting federal law or local Guam law. The Guam Organic Act is federal law and therefore clearly subject to de novo review. *Bordallo v. Reyes*, 763 F.2d 1098, 1102 (9th Cir. 1985) (asserted inconsistency of Guam law with the Organic Act; subject to de novo review); *Matter of McLinn*, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc) (district court interpretation of both federal and state law subject to de novo review).

Brown argues the district court's decision is based primarily on an interpretation of local law and is therefore subject to a more deferential standard of review. She contends DOE mistakenly relies on *McLinn* for DOE's contention that de novo review is appropriate. In *McLinn*, the court held that district court interpretations of state law are subject to de novo review. The court of appeals reasoned that it is the first appellate review of the trial court's conclusion of law and should therefore review those conclusions de novo. 739 F.2d at 1400. The court also noted that the appellate court is structurally better suited to make decisions of law than is a district court; there are three judges considering the legal issues, all of whom are unencumbered by the evidentiary process. *Id.* at 1398. This reasoning does not necessarily apply to an appeal from the district court of Guam, which was in that case a three-judge panel hearing an appeal from the Superior Court of Guam.

*Laguana v. Guam Visitors Bureau*, 725 F.2d 519 (9th Cir.1984), decided prior to *McLinn*, lends support to Brown's view that de novo review is inappropriate if local law is at issue. In *Laguana*, the court was asked to interpret a Guam statute and an executive order. The court stated it would uphold the Guam district court determinations if "they are based on a tenable theory and are not manifestly erroneous." *Id.* at 520 (quoting *Chase Manhattan Bank v. Gems-By-Gordon*, 649 F.2d 710, 712 (9th Cir.1981)). This court's rationale was that "local Guam needs and customs may differ from those with which federal courts would otherwise be familiar...." 725 F.2d at 520–21 (citing *Gumataotao v. Government of Guam*, 322 F.2d 580, 582 (9th Cir.1963)). *See also Electrical Construction & Maintenance Co. v. Maeda Pacific Corp.*, 764 F.2d 619 (9th Cir.1985).

█ We agree with Brown that a more deferential standard of review is appropriate when we are reviewing Guam local law. Because the district court in Guam in this case was a three-judge panel, it is more akin to a federal court of appeals. It was able to engage in the "collaborative, deliberative process of appellate courts [that] reduces the risk of judicial error on questions of law." *McLinn*, 739 F.2d at 1398 (quoting *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed. 46 (1984)) Because the court in this case based its decision on an examination of local legislation and executive orders, we will uphold that decision unless it is manifestly erroneous.

### B. Merits.

DOE argues the district court's decision conflicts with the Governor's responsibility to establish and maintain a school system. Section 1421g of the Guam Organic Act provides:

(a) Subject to the laws of Guam, the Governor shall establish, maintain, and operate public-health services in Guam, including hospitals, dispensaries, and quarantine stations,....

(b) The Governor shall provide an adequate public educational system of Guam, and to that end shall establish, maintain, and operate public schools at such places in Guam as may be necessary.

DOE contends section 1421g grants exclusive power to the Governor to maintain and operate public schools unencumbered by any Guam statutes. By employing the rules and regulations promulgated in Executive Order 79–030, DOE argues it was following the Governor's directives regarding maintenance of Guam's public school system. To remand and require it to employ the standard set forth in Executive Order 73–24 would be to invade the province of the Governor.

We need not decide the impact of section 1421g on the Governor's authority over DOE. That provision of the Organic Act has no relevance to the resolution of the issue here. Executive Order 79–030 is, on its face, inapplicable to DOE. There is no indication in Executive Order 79–030 that it was intended to apply to DOE. Nor is there any evidence that the Governor directed DOE to apply to its employees the rules promulgated and approved in Executive Order 79–030.

■ DOE and the Commission are two separate agencies with two separate statutes establishing them and describing their duties. Executive Order 79–030 was enacted pursuant to section 4006, Gov. Code of Guam (renumbered 4 G.C.A. § 4403 (1984)), which relates in part to the Commission's duties to hear appeals from administrative actions dismissing classified service employees. Therefore, the rules approved in Executive Order 79–030 would only apply to Brown's appeal from DOE's decision to fire her. It would not govern DOE's initial decision to fire Brown.

Executive Order 73–24 specifically refers to 4 G.C.A. § 4105. That statute directs DOE to establish rules regarding suspen-sion and dismissal of its personnel. *See* 4 G.C.A. § 4106. The district court did not err in concluding DOE employed the wrong rules and regulations. Its interpretation of Guam law is tenable and is not manifestly erroneous.

■ DOE also argues the district court decision conflicts with the Governor's responsibility to establish a school system. DOE notes that 48 U.S.C. § 1421g(b) does not contain the phrase "subject to the laws of Guam" as does section 1421g(a). DOE argues the legislature intended, by omitting this phrase with regard to the school system, to give the Governor authority over the school system exclusive of any concurrent legislative authority. A resolution of this issue requires an examination of Guam's Organic Act. Our review is therefore de novo. *See* supra, 111-A.

This argument is without merit. First, the legislative history does not indicate that Congress intended to give the Governor exclusive power over the school system. A more reasonable interpretation of the constitutional provision is that the first phrase of the first subsection was meant to apply equally to both the public health system and the public school system. *See* S.Rep. 2109, 81st Cong. 2d Sess., *reprinted in* 1950 U.S.Code Cong.Ser. 2840, 2848 ("the Governor would be responsible for the establishment and maintenance of public-health services and a public-school system") (J.A. Krug, Secretary of Interior); *id.* at 2856 ("Section 29: Places responsibility on the Governor for the establishment, maintenance, and operation of the public-health services and public-school system of Guam") (Appendix I: analysis of H.R. 7273).

Further, such a broad interpretation to the grant of authority in 48 U.S.C. § 1421g(b) would entail reading the provision in a vacuum. The authority to establish a merit system was clearly intended to be within the legislature's province. S.Rep. 2109, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.Code Cong.Ser. 2844, 2845 ("Provision is made for the establishment of a merit system for service in the govern-

ment of Guam. At the same time, the Governor is left free to appoint, by and with the consent of the Guam legislature, heads of executive agencies who would be in policy-making positions"). There is no indication Congress intended an exception regarding DOE. Allowing the Governor to establish a merit system for DOE employees, in violation of section 4004, negates the Constitution's specific grant of such authority to the legislature.

Finally, the Constitution itself limits the Governor's power of appointment. It states, "He shall appoint, and may remove, all ... employees of the executive branch of the government of Guam, except as otherwise provided ... under the laws of Guam...." 48 U.S.C. § 1422.

DOE also contends the Board's composition violates Guam's Constitution because 48 U.S.C. § 1422c provides the Governor shall appoint all heads of executive agencies and instrumentalities. DOE does not, however, advise the court of the effect of an unconstitutionally composed Board. In any event, we will not address this issue. DOE did not raise it before the Commission, the Superior Court, or the district court. Generally, an issue not raised at the district court may not be raised on appeal. *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). Three narrow exceptions to this rule are (1) a new theory or issue arises because of the change in the law while the appeal was pending; (2) the issue is only one of law not relying on any factual record; or (3) plain error occurred and an injustice might otherwise result if the court of appeals does not consider the issue. *Id.* None of the exceptions apply here. Although the issue of whether the Board is unconstitutionally composed may be purely one of law, "[t]his exception necessarily applies only when the party against whom the issue is raised would not be prejudiced and would not have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue." *United States v. Gabriel*, 625 F.2d 830, 832 (9th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843

(1981). There are a number of both factual and legal arguments that could have been raised below regarding DOE's contention. Therefore, we will decline to hear this issue.

■ Finally, Brown seeks attorney's fees pursuant to section 1022(6) of the Guam Code of Civil Procedure. On June 21, 1985 the district court of Guam found section 1022(6) violated the equal protection clause of the United States Constitution. *Santos v. Calahan*, No. 84–00043A (D.C. Guam).

On July 23, 1985 the legislature repealed section 1022(6) and replaced it with section 1022.1. That section applies to costs and attorney's fees incurred in any action filed on or after January 1, 1983. Brown filed her cause of action against the government of Guam on December 30, 1982. Brown is not entitled to recover attorney's fees.

AFFIRMED.

FLETCHER, Circuit Judge, Concurring:

I concur in the result. I write separately to express my concerns over the majority's choice of standards of review. To review part of the district court's (appellate division) rulings of law it applies a *de novo* standard, to part it applies a clearly erroneous standard. We are cited to no authority that has ever sought to untwine legal issues so that different standards of review could be applied to those rulings grounded in federal law and those grounded in state law.

Beyond this threshold disagreement with "standard-splitting" I disagree with the majority's view that our court should apply a more deferential standard to its review of local law. It finds itself bound by *Electrical Construction & Maintenance Co. v. Maeda Pacific Corp.*, 764 F.2d 619 (9th Cir.1985) and, indeed, it may be. However, *Electrical Construction* did not pay any attention to the statutory scheme that establishes the Guam courts, or the legislative history behind that statutory scheme. The statute, amended in 1984, provides Guam with both a federal district court and whatever local courts are established by

the Guam legislature. 48 U.S.C. § 1424. Appeals from the district court are heard by a three judge appellate division of the district court. *Id.* § 1424–3(b). The Guam legislature is empowered to create local appellate courts. *Id.* § 1424–1. In lieu of local appellate courts, appeals from local courts are heard by the district court. *Id.* § 1424–3(a). The Ninth Circuit has jurisdiction to hear appeals from the appellate division of the district court. *Id.* § 1424–3(c). For a period of fifteen years following the establishment of a local appellate court, the Ninth Circuit has jurisdiction to review its decisions by writ of certiorari. *Id.* § 1424–2. Otherwise, the relations between the courts of Guam and those of the United States are to be the same as those between the state and federal courts. *Id.* Guam has not yet set up a local appellate court and this court has not yet dealt with the key provisions of this scheme.

The legislative history of the provisions indicate that the 15–year transition period provided by the act "during the formative years of the new appellate court and while it establishes its institutional traditions" was intended to allow review "by a court of appeals which is familiar with the local conditions...." Explanation of Senate Subcommittee on Energy Conservation and Supply of Sen. Amdt. 3709 to H.R. 5561, 98th Cong., 2d Sess., 130 Cong.Rec. S10521, S10529 (8/10/84). *See also* 130 Cong.Rec. H9574–76 (9/14/84) (Senate Explanation presented to House as "excellent analysis." Remarks of Rep. Won Pat).

Surely, in considering the applicability of *Matter of McLinn,* 739 F.2d 1395 (9th Cir. 1984) (en banc), to decisions of the appellate division of the district court, our court should consider whether this statutory scheme and its legislative background make a difference. The court in *McLinn* laid out a variety of reasons for reviewing a district court's determinations of state law *de novo.* We found no reason to abdicate appellate responsibility to review conclusions of law *de novo* simply because the law involved was state law. 739 F.2d at 1398.

Some of the factors that led the *McLinn* court to find *de novo* review of state law appropriate apply even more strongly to review of Guam law. Ninth Circuit interpretation of Guam law is the *only* precedent besides that of the lower courts. If Guam were to set up an independent appellate system, this court still would have the ability to overrule its decisions. It seems incongruous for this court, which Congress has empowered to act as a sort of local Supreme Court, to give deference to the district court's conclusions of law. The general tone of *McLinn* also suggests that *de novo* review is always appropriate for legal issues. In addition, Congress wanted relations between federal courts and Guam courts to be like those between federal and state courts. Thus, *McLinn* should apply. Finally, only the Ninth Circuit provides Guamanians review by Article III judges; Guamanians may have some right to Article III *de novo* review.

I acknowledge that some of the factors noted in *McLinn* lend support to the majority's view. Deference to knowledge of local customs may make more sense in the context of a territory with entirely different traditions than those of the state; realistically, no Ninth Circuit judge has substantial expertise in Guamanian customs. Second, as the majority opinion points out, a three-judge panel in Guam already has the opportunity to provide the necessary careful and collaborative review of the trial court's legal conclusions. Third, it can be argued that Congress may have intended deferential review.[1]

On balance however, I conclude that *de novo* review is the appropriate standard.

---

1. The Senate explanation refers to the transitional period for the Guam courts as the same as the one provided for the Northern Mariana Islands. 130 Cong.Rec. at S10529, H9576. *See* 48 U.S.C. § 1694c(a). This court, in a pre-*McLinn* case, determined that we should give deference to NMI local law when reviewing under the scheme noted in the Senate explanation. *Camacho v. Civil Service Commission,* 666 F.2d 1257, 1262 (9th Cir.1982). *Camacho,* like this case, involved local civil service regulations and separation of powers issues. 666 F.2d at 1262–66. The Congress was aware of *Camacho* when it passed the Guam legislation. *See* 130 Cong.Rec. at S10529, H9576.

**712**

Whatever the conclusion, neither this panel nor *Electrical Construction,* should have made a decision as to standard without full consideration of the statute, its history, and Guamanians' special circumstances. In some future case in which the standard of review does make a difference, the court as a whole should reconsider the holding of *Electrical Construction.* I suggest that at this juncture of the development of their court system, Guamanians are entitled to *de novo* review of legal issues by an Article III court.