**Gloria B. NELSON, Director of Education of the Government of Guam; Ione M. Wolf, Deputy Director of Education, Petitioners–Appellants,**

v.

**Joseph F. ADA, Governor of Guam, Respondent–Appellee,**

**and**

**The Territorial Board of Education, Rosa Palomo and Anita Sukola, Real Parties In Interest–Appellees,**

**Vincente T. Pangelian, Joseph C. Carbullido, Judith P. Guthertz, Jose B. Cepeda, Cheryl N. Cunningham and Vincente T. Reyes, Intervenors–Appellees.**

No. 88–2878.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1989.

Decided June 23, 1989.

Howard Trapp, Howard Trapp, Inc., Agana, Guam, for petitioners-appellants.

Elizabeth Barrett–Anderson, Atty. Gen. of Guam, Agana, Guam, for respondent-appellee.

John E. Moore, Moore, Ching, Boertzel & Lawlor, Agana, Guam, for real parties in interest-appellees.

Before HUG, SCHROEDER and CANBY, Circuit Judges.

SCHROEDER, Circuit Judge:

The petitioners, Gloria Nelson and Ione Wolf, were officials in the Guam Department of Education, appointed to their positions by elected school boards. In 1987 the governor removed Nelson and Wolf from office on the ground that the Guam legislation establishing the boards that appointed them conflicted with the Organic Act of Guam, 48 U.S.C. § 1421g(b). The petitioners appeal from the denial of their petition for a writ of mandamus to compel the governor to reinstate them. They contend that there was never any conflict between the 1977 Guam legislation establishing the elected school board and the Organic Act. In the alternative, they argue that if there was a conflict, a 1986 amendment to the Organic Act should be interpreted as a retroactive ratification of the 1977 Guam statute under which they were originally appointed.

Our decision on the validity of the local legislation pursuant to which the petitioners were originally appointed is controlled by this court's decision in *Bordallo v. Baldwin,* 624 F.2d 932 (9th Cir.1980). We affirm the district court.

The 1977 Guam statute in question is 17 Guam Code §§ 3103–3112. The statute requires that school board members be elected rather than appointed by the governor as required under the prior statute, Guam Gov.Code § 11102 (1970). The 1977 law provides that "[t]he members of the Board of Education shall be public officers elected from the districts delineated...." 17 Guam Code § 3104.

When the legislation requiring election of the school board members was passed in 1977, the relevant provision of the Organic Act of Guam relating to education provided as follows:

The *Governor* shall provide an adequate public educational system of Guam, and to that end shall establish, maintain, and operate public schools at such places in Guam as may be necessary.

48 U.S.C. § 1421g(b) (1982) (emphasis added).

■ The critical word in the statute is the word "governor." Defendants maintain that, because this provision of the Organic Act vests in the governor the ultimate authority for establishing the public education system, the Organic Act as it existed in 1977 required that the school board members be appointed by the governor, and that they could not lawfully be selected by any other body or process. The district court agreed.

Nelson and Wolf argue that 17 Guam Code § 3104 is consistent with section 1421g(b) of the Organic Act of Guam as it existed in 1977. They argue that the authority granted to the governor under section 1421g(b) to supervise the public education system was qualified, in that the governor was required to exercise his authority "subject to the laws of Guam." *See Brown v. Civil Service Commission*, 818 F.2d 706, 709 (9th Cir.1987) (governor's authority to maintain school system did not exclude legislature's authority under the Organic Act to enact a merit protection system for all public employees). In addition, they note that the governor's power to appoint officials under section 6 of the original Organic Act of Guam, 48 U.S.C. § 1422, is also qualified. Section 1422 states that the governor "shall appoint, and may remove, all officers and employees of the executive branch of the government of Guam, except as otherwise provided in this or any other Act of Congress, or under the laws of Guam." 48 U.S.C. § 1422 (1982).

Petitioners thus contend that we should interpret the original Organic Act of Guam to allow the legislature to remove the ultimate executive authority for the Department of Education from the governor and transfer it to the elected school board. This argument, however, is foreclosed by this court's decision in *Bordallo v. Baldwin*, 624 F.2d 932 (9th Cir.1980). In *Bor-*

*dallo*, the governor of Guam challenged the actions of the legislature in amending Guam Government Code § 49004(a), which had previously provided that the Board of Trustees of the Guam Memorial Hospital would be appointed by the governor with the consent of the legislature. The amended statute provided that the appointees to the Board of Trustees would be designated by a number of specified private groups. *See Bordallo*, 624 F.2d at 933. The effect of the amendment was to eliminate all of the governor's discretion in appointments and require that he appoint the persons designated by the private organizations. *Id.*

We held in *Bordallo v. Baldwin* that, because the governor was specifically charged by section 1421g(a) of the Organic Act with the responsibility for establishing, maintaining and operating hospitals, the legislature could not reduce his function to that of validating appointments to the Board of Trustees made by others. *Id.* at 934. We rejected the principal argument made by the legislature that it could enact a different process for selection, an argument similar to that made by petitioners here. That argument was that the governor's powers of appointment under the Organic Act were qualified by section 9 of the Organic Act, 48 U.S.C. § 1422c(a), which stated that the governor's power of appointment was limited and had to be exercised in accordance with the Organic Act and "the laws of Guam." We also rejected the argument that the governor's specific responsibility with respect to the hospital was restricted by the phrase in section 1421g(a) requiring that the governor exercise his authority over the public health system "subject to the laws of Guam." *Id.* We said that:

The legislature may, of course determine whether a hospital shall exist at all, where and how large it shall be, the size and qualifications for appointment to the governing body, and a wide variety of other matters establishing the laws of Guam "subject to" which the Governor perform his function with respect to the hospital, but it may not negate the command of the Organic Act that the ulti-

mate responsibility for the governance of the Hospital be in the Governor. . . . The Legislature has in effect, taken over the entire power to establish, maintain and operate the Hospital by dictating who the governing trustees shall be.

Our more recent decision in *Brown v. Civil Service Commission,* 818 F.2d 706 (9th Cir.1987), does not detract from the controlling weight we must accord *Bordallo v. Baldwin.* In *Brown* the issue was whether the termination of a Guam Department of Education employee was governed by regulations promulgated by the Department of Education, or by the merit system covering all public employees that was promulgated by the legislature. There, the Department of Education argued, as the governor argues here, that section 1421g(b) of the Organic Act prevented Guam legislation from applying to employees of the Department of Education. In *Brown,* however, unlike this case, the Organic Act of Guam itself authorized the Guam legislation in question. Section 9 of the Organic Act, 48 U.S.C. § 1422c(a), provided expressly for legislative establishment of a merit system under which, "as far as practicable," appointments and promotions were to be made. *See Brown v. Civil Service Commission,* 818 F.2d at 709–10. In contrast, the Guam legislature's amendment of section 11102 of the Guam Government Code to provide for the election of school board members is not authorized by the provisions of any other section of the Organic Act and is inconsistent with section 29(b) of the Organic Act, 48 U.S.C. § 1421g(b).

In 1986 the United States Congress amended section 1421g(b) of the Organic Act of Guam to require that the "Government" rather than the "Governor" of Guam provide an educational system. Pub. L. 99–396, § 5, 100 Stat. 837, 839 (1986). Appellants argue that by this amendment, passed some ten years after the Guam legislature adopted the elected school board system, and some six years after our decision invalidating a similar statute in *Bordallo,* the Congress ratified the elected school board system. They argue that the

amendment should be given retrospective effect.

■ As a general rule, legislative enactments, including constitutional amendments, apply only prospectively. The Supreme Court has said that "a statute is not to be given retroactive effect unless such construction is required by explicit language or by necessary implication." *Bruner v. United States,* 343 U.S. 112, 117 n. 8, 72 S.Ct. 581, 584 n. 8, 96 L.Ed. 786 (1952).

■ The language of the amendment to the Guam Organic Act itself says little about Congress' intent to ratify any preexisting scheme of selection of school board members under local law. The evidence of legislative intent in the legislative history of the amendment is sparse and equivocal. The Senate, in reporting on the bill that was to become Public Law 99–396, noted that:

[The amendment] would amend section 29(b) of the Organic Act of Guam [48 U.S.C. § 1421g(b)], which assigns the authority to organize the Guam education system, by replacing the word "Governor" with "Government of Guam". The Guam Board of Education and the Legislature of Guam have requested that this change be made. However, the Governor opposes the change which would allow for an increase in the number of Guam officials involved in education policy. It is the intention of the Committee that the Government of Guam, not the U.S. Congress, shall determine how to allocate the authority to organize the Guam education system. This provision does not preclude delegation of this authority to the Governor under local law nor does it require that there be any changes to the current organization of the education system.

Senate Report No. 99–236 at 4, 99th Cong. 2d Sess., reprinted in 1986 U.S.Code Congressional & Admin.News 1843, 1845.

Although the committee report states that Pub.L. 99–396 "does [not] require that there be any changes to the current organization of the education system," this statement does not indicate an intention to

ratify the 1977 elected school board system. Congress was presented with, and rejected, a provision drafted by the board of education which would have expressly required that the school board be elected. The committee report merely indicates that after the enactment of the amendment to the Organic Act, Guam would be free of earlier fetters constraining its organization of the education system.

The only other pertinent evidence of congressional intent is a statement by Congressman Udall. That statement in full is as follows:

> Section 5, which would be revised by the amendment, would grant Guam the power to organize its public school system by local law. It would replace [section 1421g(b)] of the Organic Act of Guam which assigns the responsibility to organize the Guam school system to the governor.
>
> The Board of Education and the legislature of Guam have requested that we repeal this archaic provision. The Governor recognizes that it is anachronistic. Delegate Blaz has sponsored this provision to improve Guam's school system. It is not included to take sides in the inevitable debate over which Guam officials should make education policy.

131 Cong.Rec. 10682 (1985).

Congressman Udall's comments also do not supply any clear indication of intent to ratify prior Guam legislation. Indeed, in light of his remark that the amendment was not intended "to take sides in the inevitable debate" over control of educational policy in Guam, Congressman Udall's statement indicates that Congress did not intend to ratify the Guam legislature's prior acts.

The appellate division of the district court did not err in denying Nelson and Wolf's petition for writ of mandamus.

AFFIRMED.