# IN THE SUPREME COURT
## OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

LUIS S. CAMACHO, ) APPEAL NO. 90-007
 ) CIVIL ACTION NO. 88-741
 Plaintiff/Appellant, )
 )
 vs. ) OPINION
 )
NORTHERN MARIANAS RETIREMENT )
FUND, )
 )
 Defendant/Appellee. )
_____)

Argued July 30, 1990

Counsel for Plaintiff/Appellant: Douglas F. Cushnie
 P.O. Box 949
 Saipan, MP 96950

Counsel for Defendant/Appellee: Marybeth Herald
 Bergsma & Herald
 Caller Box PPP 654
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

BORJA, Justice:

### PROCEDURAL AND FACTUAL BACKGROUND

This is an appeal from a grant of summary judgment in favor of the NMI Retirement Fund ("Fund") in an action involving an application for additional public employment retirement credit. In re Appeal of Camacho, 3 CR 615 (C.T.C. 1989).

364

The appellant, Luis S. Camacho ("Camacho"), is a former government employee who retired in 1982 after 20 years and 18 days of service. He receives benefits from the Fund for that period of service.

In this action, Camacho contends that he is entitled to credit for an additional five years of service under the 19th Amendment to the NMI Constitution ("19th Amendment"), which was ratified in 1986.

Camacho applied for the credit in 1988. His request was denied by the Fund's administrator. Camacho appealed the decision to the Fund's hearing officer, who considered his claim on stipulated facts.[1] The hearing officer affirmed the administrator's decision.

Camacho then appealed the hearing officer's decision to the Fund's Board of Trustees--again, on stipulated facts. The Board affirmed the hearing officer.

Pursuant to 1 CMC § 9112,[2] Camacho then appealed to the Commonwealth Trial Court (now Superior Court) which, as noted

---

[1]The stipulated facts were: (1) Camacho's period of government service; (2) that he attained this period of service prior to the passage and ratification of the 19th Amendment; and (3) that the Fund approved his application to receive benefits. In addition, the hearing officer found that the Fund approved Camacho's application prior to the effective date of the 19th Amendment. Camacho does not dispute this finding.

[2]Subsection (b) of this statute provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action, is entitled to judicial review of the action within 30 days thereafter in the Commonwealth Trial Court."

above, upheld the Fund's decision in a summary judgment proceeding.

Camacho contends that the Fund and the trial court erred in denying his request for credit under the 19th Amendment.

## The 19th Amendment

The 19th Amendment, which was adopted at the Second (1985) NMI Constitutional Convention, provides, in part:

Retirement System.

. . .

 b) An employee who has acquired not less than twenty years of creditable service under the Commonwealth retirement system shall be credited an additional five years and shall be eligible to retire.

. . .

The amendment became NMI Const. Art. III, Sec. 20 after its ratification by the voters in 1986.

### STANDARD OF REVIEW

We review the actions of NMI administrative agencies according to the dictates of the Commonwealth Administrative Procedure Act ("APA"), 1 CMC §§ 9101 et seq. The standards for judicial review of agency action are set forth in 1 CMC § 9112(f). Since we review agency action on the identical basis as the trial court, we are not required to accord any particular deference to the trial court's conclusions. Our review of the trial court's review of agency action is de novo. In re San Nicolas, No. 90-008 (N.M.I. Sept. 5,

1990).[3]

## ANALYSIS

### I.

The first issue raised in this appeal is whether the 19th Amendment may be interpreted to permit a person who retired from government service prior its ratification to receive the additional five year credit according to its terms.

Initially, we must consider the basis for our review of this question and other issues in this appeal.

The APA statute concerning judicial review provides, in part:

> To the extent necessary to decision and when presented, the reviewing court shall <u>decide all relevant questions of law</u>, <u>interpret constitutional</u> and statutory <u>provisions</u>, and determine the meaning or applicability of the terms of an agency action.

1 CMC § 9112(f) (emphasis added). The APA judicial review standards enable the reviewing court to compel or set aside agency action for several reasons.

█Though Camacho does not specify the applicable standard in our review of this first issue (or the other issues),[4] he apparently argues that the Fund's decision should be set aside because it is "not in accordance with law." 1 CMC § 9112(f)(2)(A).

---

[3]We also note that a grant of summary judgment is reviewed <u>de novo</u>. If there is no genuine issue of material fact, the analysis shifts to whether the substantive law was correctly applied. <u>Borja v. Rangamar</u>, No. 89-009 (N.M.I. Sept. 17, 1990).

[4]R.App.Pro. 28(o) requires the appellant to identify the applicable standard of review, with citations.

367

■ "The general principles which apply to statutory construction are equally applicable in cases of constitutional construction." Pangelinan v. CNMI, 2 CR 1148, 1161 (D.N.M.I. App. Div. 1987). "A basic principle of construction is that language must be given its plain meaning." Tudela v. MPLC, No. 90-011, slip op. at 5 (N.M.I. June 7, 1990). We will apply the plain, commonly understood meaning of constitutional language "unless there is evidence that a contrary meaning was intended." Pangelinan, 2 CR at 1161.

■ The pertinent language in the 19th Amendment refers to "[a]n employee" (not both past and present employees) who, having acquired not less than 20 years of creditable service, "shall be credited an additional five years and shall be eligible to retire." (Emphasis added.) The language is plainly applicable only to employees who had not yet retired when the amendment was ratified in 1986. It does not permit an employee who retired before the amendment to "retire" again to take advantage of its terms. Likewise, the language does not support Camacho's contention that it should (in effect) be applied retroactively to enable employees who retired prior to the effective date to take advantage of its terms. There is no indication that it was intended to apply retroactively. Cf. Torvinen v. Rollins, 560 P.2d 915, 917 (Nev. 1977) ("the amendment is void of any terms indicating the legislature or electorate intended retrospective application").

■ "The presumption is that a constitutional amendment is to be given only prospective application unless the intention to make it

retrospective in operation clearly appears from its terms." <u>People v. Elliot</u>, 525 P.2d 457, 458 (Colo. 1974) (citing U.S. Supreme Court, Colorado, Arizona, Florida, Hawaii, Idaho, Louisiana, New York and South Dakota precedent). <u>See also</u> <u>State v. Wacek</u>, 703 P.2d 296 (Utah 1985), and <u>Torvinen</u>, <u>supra</u>. Camacho has failed to rebut this presumption.

 However, even if the pertinent language was ambiguous, the legislative history of the 19th Amendment[5] confirms the apparent intention that it be applied prospectively:

> [This] feature is intended to entice those employees who have 20 years or more of qualified service to retire early from public employment. This is consistent with the concern that the number of employees in the public sector must be reduced within the next seven years.

Recommendation No. 66 at 1, Committee on Governmental Institutions, <u>Journal of the Second NMI Constitutional Convention</u> (herafter "<u>Journal</u>"), 33rd Day, July 20, 1985. Discussion among the convention delegates regarding the provision also confirms the plain meaning:

> DELEGATE KING: I was thinking about the existing retirees. What will happen to those people that are now getting 20 years retirement benefits. Are they going to fall under this section?
>
> DELEGATE MAFNAS: No. They will not be covered. This will affect only those who are currently on board. Those who have retired will not be affected.

---

[5]If necessary, in construing legislation the courts may consult legislative history and the interpretation of an administering agency. <u>FunBus Systems, Inc. v. Public Utilities Commission</u>, 801 F.2d 1120 (9th Cir. 1986).

Journal at 696, 33rd Day, July 20, 1985.

## II.

The second issue is whether the denial of the five-year credit to Camacho and other former NMI government employees who retired before the effective date of the 19th Amendment violates the equal protection clause of the Fourteenth Amendment to the U.S. Constitution (hereafter "equal protection clause").

Camacho apparently contends that the Fund's decision should be set aside because it is "[c]ontrary to constitutional right, power, privilege, or immunity." 1 CMC § 9112(f)(2)(B).

This contention lacks merit.

Because public employment is not a fundamental right under equal protection analysis, Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), and because the right to receive public employee retirement benefits is not a fundamental right, United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980), a "rational basis" review standard applies.

According to the Journal, the pertinent provision of the 19th Amendment was adopted to save the government money by enticing qualified employees to retire early.[6] The provision's

---

[6]See, e.g., Recommendation No. 66 at 2, Committee on Governmental Institutions:

> A total of 100 employees already have acquired from 20 to 24 years of creditable service. Approximately 80

classification scheme bears a rational relationship to this legitimate government purpose. It does not violate the equal protection clause.

## III.

The third issue is whether the trial court erred in not considering an issue that had not been raised in the administrative proceeding.

During the pendency of the administrative proceeding, P.L. 6-5 was enacted. The act prohibits the NMI government from employing persons who simultaneously receive NMI retirement benefits; it also prevents former retirees from improving their retirement status after returning to government service.[7] Camacho argues that the court should consider the effect of P.L. 6-5 upon his case. He contends that it effectively prevents him from returning to government service to build retirement credits. Although his brief is somewhat unclear, Camacho apparently argues that P.L. 6-5, in

---

employees have more than 25 years of qualified service. Assuming that all the 180 employees elect to retire early, the Commonwealth Government would realize approximately $5,200,000.00 savings.

Journal, 33rd Day, July 20, 1985.

[7]P.L. 6-5 has since been implicitly superseded by P.L. 6-41, which provides, in part, that the benefits of NMI government retirees who return to government service will subsequently be recomputed based on the additional service and wages earned. The act clarifies that retirees may return to government service under certain circumstances, provided that their benefits are terminated for the duration of the employment.

conjunction with the 19th Amendment, also violates the equal protection clause.

The trial court declined to consider this claim, and so do we. ▌"Generally, an appellate court may not take into consideration arguments raised for the first time on appeal . . .." CNMI v. Micronesian Insurance Underwriters, Inc., 3 CR 731, 738 (D.N.M.I. App. Div. 1989). There are three narrow exceptions to this rule: (1) a new theory or issue arises because of a change in the law while the appeal was pending; (2) the issue is only one of law not relying on any factual record; or (3) plain error occurred and an injustice might otherwise result if the appellate court does not consider the issue. Brown v. Civil Service Commission, 818 F.2d 706 (9th Cir. 1987).

Camacho apparently seeks to raise this new issue under either the first or second exceptions noted above. He notes that the P.L. 6-5 was enacted during the pendency of the administrative proceeding. Further, "[a]lthough not considered below, since the effect of P.L. 6-5 is essentially a legal issue in its entirety, this court, like the trial court[,] is requested to consider the effect of the law in light of the [Fund's] denial of [19th Amendment] benefits . . .." Appellant's brief at 11.

The Fund argues that any desire that Camacho has to return to government employment has nothing to do with the issue of eligibility for the five year credit, and that his claim that he cannot obtain government employment because of the restrictive

372

application of the law is speculative.

 We agree with the Fund. Apart from our concern as to whether Camacho may properly raise this issue for the first time on appeal, it is not pertinent to the issue concerning the application of the 19th Amendment. It is also speculative. Cf. Bauer v. McCoy, 1 CR 248, 259 (D.N.M.I. 1982) ("[a] ripe dispute is one which has matured sufficiently for judicial resolution").

### IV.

The final issue is whether the Fund committed prejudicial error by not affording Camacho a reasonable opportunity to submit (1) proposed findings and conclusions to the hearing officer before he issued his decision and (2) exceptions to the decision after its issuance, as required by the Commonwealth Administrative Procedure Act ("APA").

According to the APA:

> Before a recommended initial order or decision, or an order or decision on agency review of an order or decision, the parties are entitled to a reasonable opportunity to submit for the consideration of the persons participating in the decision:
>
> > (1) Proposed findings and conclusions;
> >
> > (2) Exceptions to the order or decision or recommended order or decision; and
> >
> > (3) Supporting reasons for the exceptions or proposed findings and conclusions.

1 CMC § 9110(b).

Camacho apparently contends that the Fund's alleged failure to

afford him a reasonable opportunity to submit proposals and exceptions requires that the agency's decision be set aside because it was not rendered "in accordance with law" and/or because it was made "[w]ithout observance of procedure required by law." 1 CMC § 9112(f)(2)(A) and (B).

Another provision in the pertinent APA statute requires reviewing courts to "take due account . . . of the rule of prejudicial error" in determining whether to set aside agency action. 1 CMC § 9112(f)(2).

We recently considered a claim somewhat similar to Camacho's in In re San Nicolas, supra, which was also an appeal from a quasi-judicial administrative proceeding. In that case, a Civil Service Commission hearing officer had not issued a recommended decision. Following the dictates of 1 CMC § 9112(f)(2), we considered whether the error was prejudicial. Holding that it was, we set aside the agency's ruling. San Nicolas, slip op. at 8-10.

A significant consideration in San Nicolas related to the many factual matters in dispute. The agency's failure to afford the aggrieved party an opportunity to submit proposed findings and conclusions and to later submit exceptions to the hearing officer's recommended decision was prejudicial:

> In an administrative hearing where a hearing examiner has to listen to a multitude of disputed facts, review a plethora of documents, over a period of many days, it would be immeasurably helpful if the parties submitted their thoughts on what the findings of fact and conclusions of law should be. Who can say that the hearing officer would not have found a proposal submitted

374

by [the aggrieved party] to be valid and persuasive, and therefore, capable of influencing his decision?

Further,

In a situation where there is an abundance of evidence, with few facts being uncontested, who can say that the [review] board would not have been persuaded by the exceptions submitted?

San Nicolas, slip op. at 8-9.

█In contrast to San Nicolas, the hearing officer in this proceeding did issue a decision. Beyond that fact, a more significant difference is that the hearing officer did not have to consider disputed factual matters--Camacho and the Fund stipulated on the pertinent facts. At that stage, the sole question was whether the 19th Amendment should be given retroactive effect. (The claim that the Plan's interpretation of the 19th Amendment violated the equal protection clause was initially raised in the appeal before the Plan's Board of Trustees.) These are clearly legal questions, freely reviewable at each link in the chain of judicial appeal. San Nicolas, supra. Thus, unlike an appeal in which findings of fact are in dispute, any failure to comply with the required procedures in an appeal solely involving disputed legal conclusions is arguably less prejudicial. In that circumstance, the agency review body is not obligated to show deference to the hearing officer's conclusions, nor is the reviewing court later obligated to accord deference to the agency's

375

conclusions.[8]

Most significantly, however, Camacho has not demonstrated prejudice. "The doctrine of harmless error is applicable to review of administrative decisions." San Nicolas, slip op. at 5 (quoting C. Koch, Jr. Administrative Law and Practice § 9.8 (1985, 1987 supplement)). It is always incumbent upon the aggrieved party to demonstrate the prejudicial effect of procedural irregularities in administrative proceedings. NLRB v. Health Tec Division/San Francisco, 566 F.2d 1367 (9th Cir. 1978). Camacho has not met that burden in this appeal.

The order granting summary judgment is hereby AFFIRMED.

Jose S. Dela Cruz
Chief Justice

Ramon G. Villagomez
Associate Justice

Jesus C. Borja
Associate Justice

---

[8]Cf. 73A C.J.S. Public Administrative Law and Procedure, §§ 170, 230 (1983).