*152 ORDER AFFIRMING ENROLLMENT COMMITTEE DETERMINATION
KATHARINE ENGLISH, Chief Judge.
I. ISSUE PRESENTED
Petitioner is appealing the Enrollment Committee’s decision to deny his application for enrollment in the Confederated Tribes of the Grand Ronde Community. Petitioner’s claims on appeal are (1) that the Enrollment Committee’s decision was arbitrary and capricious, or violated his constitutional rights under federal law because the Enrollment Committee retroactively applied the wrong version of the Tribal Constitution in making their enrollment determination. (Mr. Creed claims that the Constitution in effect at the time a lineal ancestor’s blood quantum was changed should have been applied by the Enrollment Committee in its enrollment determination) and (2) that Constitutional Amendment is unconstitutional under federal law and the application of the Amendment is arbitrary and capricious because it denies membership to new applicants who have the same blood quantum as other family members who appear on the Tribal Membership Roll.
II. BACKGROUND
On July 27, 1999, the Bureau of Indian Affairs (BIA) conducted an election by eligible Tribal members to amend the Tribal Constitution. At the election, the amendment was approved by a considerable majority of the Tribal membership. On September 14, 1999, the Secretary of the Interior approved the amendment and it became effective. The amendment altered, and in certain respects increased, the Tribal membership requirements. Following the effective date of the amend *153 ment, the Tribal Enrollment Committee applied that amendment to pending applications for Tribal membership, including this Petitioner’s application, which was filed on September 28, 1999.
The Enrollment Committee reviewed Mr. Creed’s enrollment application and denied the application because he did not meet the new Constitutional enrollment requirement that he have a parent who was a Tribal member at the time of his birth. Mr. Creed’s mother, Ms. Darlene Creed, did not become a member of the Tribe until 1989. Mr. Creed was informed of the Enrollment Committee’s initial decision by letter signed by the Tribal Council Chairperson. Mr. Creed’s mother requested the Enrollment Committee reconsider its decision by letter a handwritten letter, email message to enrollment staff dated May 10, 2000. The Committee met to consider the appeal of its initial decision by Mr. Creed’s mother and decided to uphold its earlier decision of denial. Mr. Creed was informed of the Enrollment Committee’s decision on reconsideration by letter dated June 5, 2000, signed by Margo Merrier, Enrollment Coordinator. Mr. Creed then appealed the Enrollment Committee’s decision to this Court.
Petitioner has claimed, as set forth above, that the Enrollment Committee’s decision was wrong. Petitioner has asserted his claims and reasons why he believes the derision was in error. The Court assures Petitioner that it has read the record individually, and has carefully considered this case separately on its own merits.
III. STANDARD OF REVIEW
In these proceedings, the Court’s standard of review is limited. The Court can reverse or remand only if it finds that the Enrollment Committee’s decision was “arbitrary and capricious or a violation of Tribal Constitutional rights.” Enrollment Ordinance § (d)(4)(H).
IV. ANALYSIS
The many cases before the Court involve a myriad of facts and claims. As explained below, however, the Court has determined that the cases fall into two general categories: (1) those where the applications for enrollment were filed before the effective date of the Constitutional amendment, i.e. September 14, 1999, and (2) those where the applications were filed after that date. Applicants whose cases fall in the first category are entitled to a remand to the Enrollment Committee to allow the Committee to reconsider the applications under the terms of the former Constitutional requirements for Tribal membership. Petitioner’s case falls into the second category and therefore Petitioners cannot prevail in this proceeding given the limitations on the Court’s scope of review and the deference to which the Tribe, its Tribal Council, and its Enrollment Committee are entitled. Petitioners has advanced a number of claims, but none of them is legally persuasive and many of them do not fit within the Court’s limited standard of review.
Retroactive application of Constitutional Amendment I. Petitioners claim that the wrong law was applied. The argument appears to be that had the blood quantum been accurately determined earlier, the Constitution in effect at that time would have been applied; therefore it should have been applied to the current application. The Court disagrees. However, the Court determined in other cases, for other reasons, that the prior Constitution should have been applied. Those Petitioners received a discussion of when and why the prior Constitution should have been applied in their cases. The Court offers that discussion here to these Petitioners as a courtesy, and to assist in *154 understanding the basis upon which those cases were remanded, and this Petitioner’s was not.
The reason for the distinction between those who are entitled to a remand and those who are not relates to the so-called presumption against retroactivity. The general rule is that, absent some affirmative evidence of a contrary intent, a change in the law or a new law is presumed to operate prospectively only. Charles A. Wright and Kenneth W. Graham, Jr., 21 Federal Practice and Procedure, § 5124 at 591 (1977). See also Norman J. Singer, 2 Statutes and Statutory Construction, § 41:4 at 388 (6th ed. 2001) (“Retrospective operation is not favored by the courts and a law will not be construed as retroactive unless the act dearly, by express language or necessary implication, indicates that the legislature intended a retroactive application.”) The presumption applies to constitutional amendments, as well as to legislative enactments. Nelson v. Ada, 878 F.2d 277, 280 (9th Cir.1989).
The rule is based on a principle of fairness.
“[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than [the federal] Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the ‘principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.’ ” Kaiser [Aluminum & Chemical Corp. v. Bonjorno], 494 U.S. [827], at 855, 110 S.Ct. 1570, 108 L.Ed.2d 842 [ (1.990) ] (Scalia, J., concurring).
Landgraf v. USI Film Products, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Singer, 2 Statutes and Statutory Construction, § 41:2 at 377 (“It is a fundamental principle of jurisprudence that retroactive application of laws in usually unfair.”)
In determining whether a change in the law can operate retrospectively, a court’s “first task is to determine whether [those who enacted it] ha[ve] expressly prescribed the [new law’s] proper reach.” Id. at 280, 114 S.Ct. 1483. If those who enacted a new law have explicitly said that it should operate retroactively, then “there is no need to resort to judicial default rules.” Id.
“When, however, the [new law] contains no such express command, the court must determine whether the new [law] would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed. If the statute [or constitutional amendment] would operate retroactively, our traditional presumption teaches that it does not govern absent clear [evidence of] intent favoring such a result.” Id.
In these proceedings, the Court’s standard of review is limited. The Court can reverse or remand only if it finds that the Enrollment Committee’s or the Tribal Council’s decision was “arbitrary and capricious or a violation of Tribal Constitutional rights.” Enrollment Ordinance § (d)(4)(H). By definition, however, it is arbitrary and capricious to apply the wrong source of law — here the wrong constitutional provision — to a decision. See United Kingdom v. United States, 238 F.3d 1312, 1319 n. 8 (11th Cir.2001); United States v. Mietus, 237 F.3d 866, 870 (7th *155 Cir.2001). The issue thus becomes whether the Enrollment Committee erred in applying the new Constitutional amendment to applications that were filed before the amendment became effective.
The Court finds that, as to those applications filed before the effective date of the Constitutional amendment, the Enrollment Committee applied the wrong law. As to those cases filed after the effective date of the amendment, the Enrollment Committee applied the correct law.[1]
The issues which then arise for this Petitioner are whether the new Constitutional amendment, or the application of it to Petitioner’s case, is arbitrary or capricious or violates any Tribal Constitutional rights, or whether there are any other claims which support a reversal or remand in this case.
Due Process and Equal Protection. The Tribe did not deprive Petitioner of due process by considering his application under the new amendment. See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 61, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (under state workers’ compensation system, claimants do not have a property interest in payments for medical treatments for which they are eligible, but to which they are not yet entitled). Applying the new amendment also did not result in any equal protection violation. The Tribe has the right to define its own membership for tribal purposes, Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), and the Tribe was simply exercising that right, and drawing reasonable distinctions, when its members voted to amend the Constitution.
Blood Quantum. Petitioner contends that, in the past, the Tribe has made an error in computing blood quantum. Petitioners aver that those errors led to the current denial of membership, and that the Tribe had some independent obligation to correct the errors. Neither of these claims falls within the Court’s limited scope of review.
Petitioner asserts that once the blood quantum was corrected, the Enrollment Committee should have applied the law in effect at the date on which the proper blood quantum should have been determined. Once again, mistakes made and not yet corrected at the time of application for membership cannot be remedied by this Court, and review of that error is not within the Court’s authority.
That the Court has not accepted the arguments and pleas of Petitioner in this case does not mean that the Court is not moved by Petitioner’s often poignant complaints that families have been split, with some in the Tribe and some not, and that individuals have been cut off from a Tribe and a heritage that is meaningful and significant to them. But it is the Tribe’s responsibility to define its membership, not the Court’s. If those pleas are to have any effect, they must be made to the Tribal leadership and to the Tribal members who have the authority to shape the membership and the future of the Tribe. The Court has neither that responsibility nor the authority. The Court can only enforce the law, as it has done in this opinion and in these cases.
V. CONCLUSION
The Enrollment Committee’s decision to deny Petitioner’s enrollment application *156 was not arbitrary and capricious or a violation of Petitioner’s Constitutional rights.
IT IS HEREBY ORDERED:
The decision by the Enrollment Committee is affirmed.

. A continuing analysis of this issue is available in the Court's opinions in cases in which the Petitioner prevailed, and the case was reversed and remanded, because the application was filed before the effective date of the amendment. These opinions can be found on the internet (www.grandronde.org,) or by calling the Tribal Court.