
# IN THE SUPREME COURT OF GUAM

## IN RE: REQUEST OF LOURDES A. LEON GUERRERO, *I MAGA'HÅGAN GUÅHAN*, RELATIVE TO THE POWER OF THE EXECUTIVE BRANCH TO ESTABLISH, MAINTAIN, AND OPERATE QUARANTINE FACILITIES IN GUAM AND TO PROMULGATE QUARANTINE AND SANITATION REGULATIONS FOR THE PROTECTION OF GUAM AGAINST THE IMPORTATION AND SPREAD OF DISEASE

Supreme Court Case No.: CRQ20-002

## OPINION

## Cite as: 2021 Guam 6

Request for Declaratory Judgment Pursuant to
Section 4104 of Title 7 of the Guam Code Annotated
Argued and submitted on May 7, 2021
Via Zoom video conference


E-Received
7/2/2021 1:42:00 PM

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion         Page 2 of 36

Appearing for Petitioner
*I Maga'hågan Guåhan*:
Sophia Santos Diaz, *Esq.*
Leslie A. Travis, *Esq.*
Office of the Governor of Guam
Ricardo J. Bordallo Governor's Complex
Adelup, GU 96910

Appearing for Party in Interest
Department of Public Health and
Social Services:
Shannon J. Taitano, *Esq.*
Chief Deputy Attorney General

Joseph A. Perez, *Esq.*
Janice M. Camacho, *Esq.*
Assistant Attorneys General

Office of the Attorney General
590 S. Marine Corps Dr.
Tamuning, GU 96913

Appearing for Party in Interest
Public Defender Service Corporation:
Brian Eggleston, *Esq.*
Assistant Public Defender
Public Defender Service Corporation
779 Rte. 4
Sinajana, GU 96910

Appearing for Party in Interest
*I Mina'trentai Sais Na Liheslaturan Guåhan*:
Ana Won Pat-Borja, *Esq.*
Legislative Counsel
Guam Legislature Legal Bureau
163 W. Santo Papa
Hagåtña, GU 96910

Appearing for *Amicus Curiae*
Attorney General of Guam:
James L. Canto II, *Esq.*
Deputy Attorney General

Jordan Lawrence Pauluhn, *Esq.*
Assistant Attorney General

Office of the Attorney General
590 S. Marine Corps Dr.
Tamuning, GU 96913

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 3 of 36

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**PER CURIAM:**

**[1]**      Petitioner Lourdes A. Leon Guerrero, *I Maga'hågan Guåhan* ("the Governor"), filed a Request for Declaratory Judgment under 7 GCA § 4104 requesting this court interpret portions of the *Islan Guåhan* Emergency Health Powers Act ("EHPA") (10 GCA § 19101 *et seq.* (2005)) relative to the Governor's power over public health and quarantine in the Organic Act of Guam (codified at 48 U.S.C.A. § 1421g(a) (Westlaw through Pub. L. 117-20 (2021))).  The Governor also requested we declare sections 19604 and 19605 of the EHPA inorganic and void for violating separation of powers principles.

**[2]**      The Organic Act of Guam bestows specific quarantine powers to the Governor, and we hold that the legislative enactment of section 19605 impermissibly encroaches upon that power. Section 19605 is inorganic and void.  We also hold that section 19604 does not violate separation of powers and does not permit a statutory challenge to a quarantine order issued by the Department of Public Health and Social Services ("DPHSS").  Even with no statutory challenge in the EHPA to a quarantine order, we hold that constitutional challenges are permitted and subject to the principles set forth by the United States Supreme Court in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).  Finally, we hold that the courts of Guam have the inherent power to review agency action for arbitrariness, capriciousness, and abuse of discretion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**[3]**      On March 14, 2020, the Governor issued an executive order declaring a state of emergency to respond to the novel coronavirus ("COVID-19").  *See* Exec. Order No. 2020-03 at

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion            Page 4 of 36

1.  Following the first three confirmed cases of COVID-19, the Governor implemented several emergency measures by executive order to contain the spread of COVID-19, including the quarantine of incoming travelers in government facilities. *See* Exec. Order No. 2020-04 at 1-2. The Governor also evoked her power under the EHPA and designated DPHSS as the Public Health Authority. *See* Exec. Order No. 2020-03 at 1. DPHSS has issued and continues to issue directives and quarantine guidance memoranda as an evolving response to COVID-19. *Compare* DPHSS Guidance Mem. 2020-11 Rev4 (July 24, 2020) (no quarantine or negative test required for incoming travelers from low risk areas staying less than five nights), *with* DPHSS Guidance Mem. 2020-11 Rev12 (June 18, 2021) (all incoming travelers subject to a ten-day quarantine period with exemption for fully vaccinated individuals and home quarantine for those arriving with negative COVID-19 test).[1]

[4]      As in other jurisdictions across the nation, lawsuits were filed challenging executive and agency actions in response to measures implemented to slow the transmission of COVID-19. The Superior Court of Guam heard individual challenges to quarantine orders issued by DPHSS. *See, e.g.*, Ikei v. Dep't of Pub. Health & Soc. Servs., SP0138-20/SP0141-20 (Finds. Fact & Concl. L. at 2 (Oct. 27, 2020)). The Public Defender Service Corporation ("PDSC") was appointed to represent individuals or groups of individuals subject to quarantine who were not otherwise represented by counsel. *See* Igros v. Dep't of Pub. Health & Soc. Servs., SP0127-20 (Gen. Order Appointing Pub. Def. Serv. Corp. Represent Persons in Quarantine & Entering Quarantine (Sept. 25, 2020)). Some challenges succeeded in releasing individuals from government facilities to home quarantine or without requiring home or self-quarantine. *See*

---

[1] DPHSS Guidance Memoranda are posted online at http://dphss.guam.gov/covid-19-jic-releases-executive-orders/.

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 5 of 36

Bellis v. Dep't of Pub. Health & Soc. Servs., SP0207-20 (Dec. & Order at 5 (Dec. 3, 2020));

*Ikei*, SP0138-20/SP0141-20 (Finds. Fact & Concl. L. at 26-27).

**[5]**      Against this backdrop, the Governor requested declaratory judgment over five questions

of law.  Req. Declaratory J. at 6 (Dec. 24, 2020).  First, whether "CDC guidelines are mandatory

in Guam."  *Id.* at 11.  Second, whether CDC guidelines about quarantine for travelers are

"binding on DPHSS such that DPHSS may not implement a quarantine policy that is more

restrictive than CDC guidelines."  *Id.*  Third, whether quarantine orders may "be challenged on

constitutional grounds even where they reasonably bear a relationship to the public health

emergency and do not result in a plain and clear invasion of fundamental rights."  *Id.*  And if yes,

"what level of scrutiny should be applied to the court's review, whether rational, intermediate, or

strict?"  *Id.*  Fourth, whether a court may "grant a request for release from quarantine on the basis

of amenities provided in quarantine facilities."  *Id.*  Last, whether a court may "modify a lawful

quarantine order issued by DPHSS or does such modification impinge on the Governor's power

and duties to quarantine and protect against the spread of disease and interfere with the

operations of the Executive Branch," and if so, "[u]nder what circumstances may a court modify

a lawful quarantine order issued by DPHSS?"  *Id.*

**[6]**      PDSC filed an Interested Parties' Motion to Deny Request for Declaratory Judgment or,

in the Alternative, Permit Public Defender Service Corporation to Intervene as Respondent on

Behalf of Incoming Travelers Subject to Quarantine.  This court granted in part and denied in

part PDSC's motion and certified two of the Governor's questions for declaratory judgment.

The court also granted PDSC's request to represent the interests of incoming travelers subject to

quarantine.  The parties were invited to brief these two certified questions.  First, may quarantine

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 6 of 36

orders be challenged on constitutional grounds?  Order & Scheduling Order at 5 (Dec. 31, 2020).  If yes, what level of scrutiny should be applied to a court's review, whether rational, intermediate, or strict?  *Id.*  And second, may a court modify a quarantine order issued by DPHSS?  *Id.*  If yes, under what circumstances, and does such modification impinge on the Governor's power and duties to quarantine and protect against the spread of disease and interfere with the operations of the Executive Branch?  *Id.* at 6.

[7]     In her reply brief, the Governor asserted a new issue arguing 10 GCA §§ 19604 and 19605 of the EHPA were inorganic and void for violating separation of powers principles.  We exercised our discretion to review the newly raised separation of powers issue.  *See* Second Order & Scheduling Order at 2 (Mar. 9, 2021).  The court also invited interested parties to brief whether statutory challenges to quarantine orders are permitted under 10 GCA §§ 19604 and 19605, and, if so, how are sections 19604 and 19605 reconciled with the quarantine powers granted to the Governor in the Organic Act?  *See id.* at 3-4.  The Governor moved to strike pages 5-13 of PDSC's brief responding to the newly raised separation of powers issue.  The Governor argued that PDSC went beyond the separation of powers question.  Given the complexity of the questions before the court and the shifting nature of the litigation, we denied the motion and invited the Governor to respond to PDSC in her supplemental reply brief.  The court received interested party briefs from PDSC, DPHSS, *I Mina'trentai Sais Na Liheslaturan Guåhan* ("the Legislature"), and the Office of the Attorney General as *amicus curiae*.

## II.  JURISDICTION

[8]     The Supreme Court has original jurisdiction over declaratory judgment actions.  7 GCA § 4104 (2005).  The governor of Guam may request a declaratory judgment "as to the

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 7 of 36

interpretation of any law, federal *or* local" and "upon any question affecting the powers and duties of *I Maga'[håga]* and the operation of the Executive Branch." *Id.* In addition, "declaratory judgments may be issued only where it is a matter of great public interest and the normal process of law would cause undue delay." *Id.*

[9]      By Order dated December 31, 2020, the court certified two questions for declaratory judgment after scrutinizing the questions under a 7 GCA § 4104 subject matter jurisdiction analysis. *See* Order & Scheduling Order at 5-6. The Governor's questions requested interpretation of local laws; therefore, the court could address the questions by declaratory judgment. *See id.*

[10]     In her Reply Brief, the Governor raised a new argument as a reply to PDSC's statutory interpretation of whether a court may modify a DPHSS quarantine order. The Governor asserted for the first time that the Legislature exceeded its power by passing sections 19604 and 19605 of the EHPA because those sections usurp the Governor's quarantine powers in the Organic Act. Reply Br. at 2 (Mar. 2, 2021). We exercised our discretion to review the new argument. Second Order & Scheduling Order at 2 ("Issues raised for the first time in a reply brief are deemed waived unless we decide to review them in the exercise of our discretion." (quoting *People v. Borja*, 2017 Guam 20 ¶ 28)).

[11]     In its Supplemental Brief, PDSC argues jurisdiction is not proper because the questions certified in the December 31, 2020 Order were certified under the first subject matter prong—interpretation of the law. PDSC's Suppl. Br. at 1 (Apr. 6, 2021). The Governor, however, raised a new separation of powers issue, and separation of powers questions have only ever been

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                                Page 8 of 36

certified by the court under the second subject matter prong—questions affecting the powers and duties of the Governor and Executive Branch. *See id.* at 1-2.

[12]      Separation of powers questions are proper subject matter for declaratory judgment actions. *See, e.g.*, *In re Request of Governor Carl T.C. Gutierrez, Relative to the Organicity & Constitutionality of Pub. Law 26-35* ("*In re Request of Governor Gutierrez II*"), 2002 Guam 1 ¶ 18 ("[T]he Governor may obtain review of an issue under section 4104 if his request affects his powers and duties as Governor and the operation of the Executive Branch."). In *In re Request of Governor Gutierrez II*, we elaborated on the separation of powers questions permitted under section 4104. *Id.* ¶ 25. "[S]ection 4104 contains limiting language, and the court is only permitted to address questions that involve allegations that one branch's actions 'impinge' on the other branch's operations." *Id.* For instance, a declaratory judgment may not issue without an action of the requesting party dependent on it. *See id.* ¶ 19 (collecting cases). Another instance where a separation of powers question does not meet the jurisdictional requirements is when the governor's question "only concerns another branch of the government or . . . solely impacts subordinate executive officers and agencies." *Id.* ¶ 20.

[13]      Here, the Governor asks whether the enacted legislation impinges on her Organic Act powers and duties over quarantine. The Governor has issued executive orders for the quarantine of incoming passengers and enabled DPHSS to issue quarantine rules and regulations. The Governor's question centers on her and the Executive Branch's existing duties and exercise of their power to fight the spread of COVID-19. This is not an instance when the question only concerns another branch of government or solely impacts subordinate executive officers and agencies. While we invited interested parties to brief the separation of powers issue because it

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                                  Page 9 of 36

was raised within the context of a different certified question, this issue itself is proper subject matter for declaratory judgment.

[14]    Our declaratory judgment statute has two other requirements.  "The declaratory judgments may be issued only where it is a matter of great public interest and the normal process of law would cause undue delay."  7 GCA § 4104.  These requirements are also met.

[15]    Whether sections 19604 and 19605 infringe on the Governor's Organic Act powers to promulgate quarantine regulations is a matter of great public interest.  "[P]ublic interest . . . signifies an importance of the issue to the body politic, the community, in the sense that the operations of the government may be substantially affected one way or the other by the issue's resolution."  *In re Request of Governor Gutierrez II*, 2002 Guam 1 ¶ 26 (quoting *In re Request of Governor Carl T.C. Gutierrez for a Declaratory Judgment as to Organicity of Guam Pub. L. 22-42* ("*In re Request of Governor Gutierrez I*"), 1996 Guam 4 ¶ 4).

[16]    This question has broad ranging impacts for all branches of government, the community, and anyone traveling to Guam during a public health emergency.  The Governor has a duty to establish, maintain, and operate quarantine stations and promulgate quarantine regulations when necessary.  48 U.S.C.A. § 1421g(a).  Quarantine measures have been a part of the government's response to the COVID-19 public health emergency since the first cases were confirmed on the island.  Exec. Order No. 2020-04 at 1-2.  Individuals subject to quarantine have challenged quarantine orders issued by DPHSS in the Superior Court citing sections 19604 and 19605.  *See, e.g.*, *Ikei*, SP0138-20/SP0141-20 (Finds. Fact & Concl. L. at 2).  PDSC was appointed to represent quarantined individuals.  *See Igros*, SP0127-20 (Gen. Order Appointing Pub. Def. Serv. Corp. Represent Persons in Quarantine & Entering Quarantine).  DPHSS has an existing

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                     Page 10 of 36

governmental duty as the agency delegated by the Governor to develop and implement quarantine policy. Exec. Order No. 2020-03 at 1; Exec. Order No. 2020-04 at 3. Three interested parties and the Attorney General as *amicus curiae* submitted briefs to this court on the powers of the Governor and the Executive Branch over quarantine and interpretations of sections 19604 and 19605. Resolving this separation of powers question significantly affects the community and the operations of government. As this is a matter of great public interest, the second jurisdictional requirement is met.

[17] The final jurisdictional requirement is that the normal processes of law would cause undue delay. *See* 7 GCA § 4104. We analyze undue delay using a two-element test: "we must (1) measure the delay relative to the time that would be consumed by litigating the issue through the 'normal process of law' and (2) determine whether this delay is 'excessive or inappropriate.'" *In re Request of I Maga'låhen Guåhan Eddie Baza Calvo Relative to the Interpretation & Application of Organic Act Section 1423B & What Constitutes the Affirmative Vote of the Members of I Liheslaturan Guåhan*, 2017 Guam 14 ¶ 11 (citing *In re Request of Governor Gutierrez I*, 1996 Guam 4 ¶ 7).

[18] In *In re Request of Governor Gutierrez I*, delay was not undue because a direct appeal was pending from the Superior Court judgment in the request for declaratory judgment. 1996 Guam 4 ¶ 8. In *In re Request of Governor Felix P. Camacho Relative to the Interpretation of Section 11 of the Organic Act of Guam & the Education Facilities Construction Initiatives Act of 2001* ("*In re Request of Governor Camacho III*"), the anticipated comparative delay through the normal processes of law was excessive or inappropriate given the needs and interest of the island to expedite the resolution of questions over financing public schools. 2006 Guam 5 ¶ 10. We

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                     Page 11 of 36

find the unique circumstances here to constitute undue delay.  Unlike *In re Request of Governor Gutierrez I*, there is no pending direct appeal by DPHSS or by a quarantined individual of an order issued by the Superior Court.  Even an expedited appeal of such an order may be moot and never reach substantive appellate review.  The estimated difference in speed between reaching these issues through the normal processes of law would be excessive or inappropriate relative to an action under 7 GCA § 4104.  Like in *In re Request of Governor Camacho III*, expedited resolution of the issues here are in the interest of the island and travelers seeking entry into Guam.  Because litigating the issues through the normal processes of law would cause delay that is excessive or inappropriate, the third requirement is met.

[19]     Therefore, we clarify, the court has jurisdiction to issue a declaratory judgment on whether statutory challenges to quarantine orders are permitted under 10 GCA §§ 19604 and 19605, and if so, how these sections are reconciled with the quarantine powers granted to the Governor in the Organic Act.

### III.  STANDARD OF REVIEW

[20]     "For cases brought before this court pursuant to our original jurisdiction, all issues are determined in the first instance."  *In re Request of Governor Camacho III*, 2006 Guam 5 ¶ 12 (citing *In re Request of Governor Gutierrez II*, 2002 Guam 1 ¶ 8; *In re Request of Governor Felix P. Camacho Relative to the Interpretation & Application of Section 11 of the Organic Act of Guam* ("*In re Request of Governor Camacho I*"), 2003 Guam 16 ¶ 8, *rev'd on other grounds*, *Limtiaco v. Camacho*, 549 U.S. 483 (2007)).

//

//

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                Page 12 of 36

## IV.  ANALYSIS

[21]    Although this litigation expanded after the Governor submitted her Reply Brief, that expansion revealed a question central to the disposition of this matter.  Before turning to the questions certified in the December 31, 2020 Order and Scheduling Order, we must first determine whether statutory challenges to quarantine orders are permitted under 10 GCA §§ 19604 and 19605, and if so, how these sections are reconciled with the quarantine powers granted to the Governor in the Organic Act.  At the heart, this is a separation of powers issue. *See supra* Part II.  We address first whether the legislative enactment of sections 19604 and 19605 of the EHPA violate separation of powers principles by impinging on the Governor's Organic Act powers and duties over quarantine under 48 U.S.C.A. § 1421g(a).

### A.  Section 19604 Can Be Reconciled with the Quarantine Powers Granted to the Governor in the Organic Act, But Section 19605 Cannot

#### 1.  Separation of Powers Principles

[22]    Under the Organic Act, the government consists of three separate but co-equal branches of government.  *See* 48 U.S.C.A. § 1421a ("The government of Guam shall consist of three branches, executive, legislative, and judicial . . . .").  The applicability of the separation of powers doctrine in Guam is evident in the language of the Organic Act and has long been recognized by this court.  *See Villagomez-Palisson v. Superior Court (Laguana)*, 2004 Guam 13 ¶ 14 ("This court has consistently held that the concept of separation of powers exists in Guam."); *Hamlet v. Charfauros*, 1999 Guam 18 ¶ 9 ("By its very language, therefore, the Organic Act requires application of the constitutional doctrine of separation of powers to government of Guam functions." (quoting *Taisipic v. Marion*, 1996 Guam 9 ¶ 26)).

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion

Page 13 of 36

[23]    As between the legislature and the executive, the separation of powers doctrine is violated when "the Legislature has acted beyond its authority." *In re Request of I Mina' Trentai Dos Na Liheslaturan Guåhan Relative to the Use of Funds from the Tax Refund Efficient Payment Trust Fund*, 2014 Guam 15 ¶ 18. Invalid legislative actions "impinge upon the Governor's authority." *Id.* This court adopted the U.S. Supreme Court's framework in *Nixon v. Administrator of General Services*, 433 U.S. 425, 443 (1977), for evaluating separation of powers challenges. *See People v. Perez*, 1999 Guam 2 ¶ 17, *overruled on other grounds by People v. Shimizu*, 2017 Guam 11. "[T]wo separate elements must be evaluated: (1) whether the statutory provision prevents the accomplishment of constitutional functions and (2) if so, whether the disruptive impact is justified by any overriding constitutional need." *Id.*

[24]    Separation of powers issues are addressed on a case-by-case basis and "must begin with the general rule that legislative enactments are presumed to be constitutional." *In re Request of Governor Gutierrez II*, 2002 Guam 1 ¶ 41. The party alleging that a statute is unconstitutional bears the burden of proof. *Id.*

[25]    The Governor argues 48 U.S.C.A. § 1421g(a) grants her "ultimate authority" over quarantine. Reply Br. at 4. The Legislature argues against an interpretation of § 1421g(a) that suggests the Governor has an enhanced quarantine power. Rather, the Legislature contends the Governor's power in § 1421g(a) is subject to the laws of Guam and the Organic Act grants legislative power and authority to the Legislature of Guam. Legislature's Br. at 6 (Apr. 6, 2021). Therefore, the Legislature argues it has concurrent police and lawmaking power to legislate quarantine. *Id.*

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion     Page 14 of 36

[26]     The Governor counters that the Legislature's Organic Act powers must be exercised consistently with other provisions of the Organic Act, and the Legislature cannot enact laws in derogation of § 1421g(a).  Suppl. Consol. Reply Br. at 2 (Apr. 26, 2021).  The Governor offers the 1986 Amendment to § 1421g(b) in support of her interpretation of § 1421g(a) that ultimate quarantine authority vests in her.  *Id.* at 22-26.  Specifically, the Governor cites the legislative history of the amendment to § 1421g(b), which changed "governor" to "government."  *Id.* at 22-23.  This change provided the government of Guam authority to organize its education system as opposed to that authority residing singularly with the governor.  *See* S. Rep. No. 99-236, at 4 (1986) as reprinted in 1986 U.S.C.C.A.N. 1843, 1845.  Unlike § 1421g(b), the subsection at issue here—§ 1421g(a)—has never been amended.  Thus, the Governor argues § 1421g(a) grants her ultimate authority over public health services and quarantine.  Suppl. Consol. Reply Br. at 18, 26.

[27]     We agree with the Governor's interpretation of "subject to the laws of Guam" in § 1421g(a)—the phrase does not describe ordinary separation of powers doctrine.  Under § 1423a, the Legislature has a general grant of authority to legislate quarantine absent a more specific grant elsewhere in the Organic Act.  *See* 48 U.S.C.A. § 1423a ("The legislative power of Guam shall extend to all rightful subjects of legislation not inconsistent with the provisions of this chapter and the laws of the United States applicable to Guam.").  Contrastingly, the Governor has enumerated powers to establish, maintain, and operate quarantine stations and promulgate quarantine regulations.  48 U.S.C.A. § 1421g(a).  And as we stated, "a narrower, more specific provision of a statute takes precedence over a more general provision of the same statute."  *Camacho v. Estate of Gumataotao*, 2010 Guam 1 ¶ 19 (citing *Rose v. State*, 123 P.2d 505, 512

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 15 of 36

(Cal. 1942)). The specific enumerated quarantine powers granted to the Governor in § 1421g(a) control over a general grant of power to the Legislature in § 1423a. Thus, we are persuaded by the Governor's argument that "subject to the laws of Guam" in § 1421g(a) cannot be read as ordinary separation of powers principles because doing so renders the phrase surplusage. Accordingly, the Legislature may not enact laws in derogation of the Governor's quarantine authority in § 1421g(a). *See In re Request of Governor Camacho I*, 2003 Guam 16 ¶ 15 n.5.

### 2. History of the Organic Act

[28]     To interpret § 1421g(a) and the grant of executive power it contains, we must look back further than the 1986 amendments to the Organic Act to the evolution of self-governance in Guam since becoming an unincorporated territory of the United States, which it remains to this day. *See* 48 U.S.C.A. § 1421a.

[29]     The United States gained possession of Guam in 1898 from Spain by the Treaty of Peace Between the United States of America and the Kingdom of Spain ("Treaty of Paris"). Treaty of Paris, Dec. 10, 1898, U.S.-Spain, 30 Stat. 1754 (1899). The United States then installed a government controlled by the Navy and appointed a Naval governor as the head of government. *See In re Request of Governor Felix P. Camacho Relative to the Interpretation & Application of Sections 6 & 9 of the Organic Act of Guam* ("*In re Request of Governor Camacho II*"), 2004 Guam 10 ¶¶ 19, 21 (citing Arnold H. Leibowitz, *Defining Status: A Comprehensive Analysis of United States Territorial Relations* 316-18 (1989); Paul Carano & Pedro C. Sanchez, *A Complete History of Guam* 347 (1964)).

[30]     In 1917, the Guam Congress was created to make recommendations to the Naval governor. *See id.* ¶ 20. In reality, however, the Naval governor "retained virtually all power

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                Page 16 of 36

regarding the administration of Guam." *Id.* ¶ 21 (citing Stanley K. Laughlin, Jr., *The Law of United States Territories and Affiliated Jurisdictions* 403 (1995); Carano & Sanchez, *supra*, at 229). In 1947, after the United States recaptured Guam following Japanese occupation in World War II, Acting Secretary of the Navy John L. Sullivan issued a proclamation directing that only the Guam Congress could change existing law, implicitly rejecting unilateral amendment through executive order by the Naval governor. *Id.* ¶¶ 19, 22 (citing Carano & Sanchez, *supra*, at 347). This proclamation "was the first substantive grant of power to non-appointed, non-naval officials." *Id.* ¶ 22.

[31]     The shift away from Naval governance toward civil governance continued when President Harry S. Truman transferred administration of Guam to the Department of the Interior and appointed the first civilian governor in 1949. *Id.* ¶ 23 (citing Carano & Sanchez, *supra*, at 353, 355). A year later, "a civil government in Guam became a reality, when the passage of the Organic Act of Guam created three branches of government." *Id.* ¶ 24. From the time when the United States gained possession of Guam in 1898 and until passage of the Organic Act in 1950, the political status of Guam was atypical "with a military governor holding all legislative, executive, and judicial authority." Jon M. Van Dyke, *The Evolving Legal Relationships Between the United States and Its Affiliated U.S.-Flag Islands*, 14 U. Haw. L. Rev. 445, 488 (1992).

[32]     "Under the Organic Act, the position of the civilian Governor mirrored its predecessor under the United States Navy and was given broad powers." *In re Request of Governor Camacho II*, 2004 Guam 10 ¶ 25. Despite the passage of the Organic Act, the governor of Guam continued to be appointed by the President of the United States. *Id.* ¶ 27. "Not until 1968 did the people of Guam exercise their voices in choosing the executive leaders of their island." *Id.* ¶

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion     Page 17 of 36

28 (citing Guam Elective Governor Act, Pub. L. 90-497 (1968)).  The elected governor continued to enjoy broad executive powers.  *See id.* ¶ 29.  In 1998, the Organic Act was amended to clarify legislative power.  *See* Pub. L. 105-291, 105th Cong., § 4 (1998) (enacted and codified at 48 U.S.C.A. §§ 1421g, 1423a).

[33]    It is against this historical backdrop we recognize the governor's executive power in 48 U.S.C.A. § 1421g(a).  This section of the Organic Act—which specifically mandates the governor establish, maintain, and operate quarantine stations and promulgate quarantine regulations, when necessary—has never been amended.  Section 1421g(a) was enacted when the power of the legislature and judiciary were not as robust as the present day, and the appointed governor enjoyed more power than at present.  The parties do not dispute this is a unique grant of power specifically bestowed on the governor of Guam.  But it is more than unique; it is a "command of the Organic Act" of "ultimate responsibility" to the governor.  *Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980).

### 3.  Ninth Circuit Jurisprudence

[34]    "The Organic Act serves the function of a constitution for Guam."  *Haeuser v. Dep't of L., Gov't of Guam*, 97 F.3d 1152, 1156 (9th Cir. 1996).  "In general, it provides for the three branches of government consistent with the constitutional structure of the United States and the powers of each branch flow from, and are limited by the Organic Act."  *Baldwin*, 624 F.2d at 934.  The Organic Act not only serves as the constitution of Guam, it is also a federal statute.  "Ninth Circuit cases that address Organic Act issues will be followed by this court, insofar as

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 18 of 36

such cases are reasonably supported by law."[2]  *Underwood v. Guam Election Comm'n*, 2006 Guam 17 ¶ 35.  As the Ninth Circuit's decision in *Bordallo v. Baldwin*, 624 F.2d 932 (9th Cir. 1980)—interpreting the governor's power under § 1421g(a)—is reasonably supported by law, and no party has argued why it should not be followed, we will follow *Baldwin*'s interpretation of that section.

[35]    The Governor's power under § 1421g(a) is:

> Subject to the laws of Guam, the Governor shall establish, maintain, and operate public-health services in Guam, including hospitals, dispensaries, and quarantine stations, at such places in Guam as may be necessary, and [s]he shall promulgate quarantine and sanitary regulations for the protection of Guam against the importation and spread of disease.

48 U.S.C.A. § 1421g(a).

[36]    In *Baldwin*, the legislative enactment challenged as violating separation of powers principles effectively eliminated all discretion over appointments to the Guam Memorial Hospital's Board of Trustees by the governor and required the governor to appoint persons designated by private organizations.  624 F.2d at 933.  There, the legislature argued the law was organic because the governor's "general appointive powers as set forth in Section 1422c(a)" were subject to legislative action and the governor's "specific responsibility with respect to hospitals is restricted by the inclusion in Section 1421g(a) of the phrase 'subject to the laws of Guam.'"  *Id.* at 934.  But the legislature "failed to recognize that legislative power is limited by

---

[2] As we explained in *Underwood*:

> [B]ecause the Supreme Court of Guam is now the final arbiter of questions arising through the jurisdiction of the courts of Guam (short of final *certiorari* review by the United States Supreme Court), we recognize our authority to depart from Ninth Circuit cases interpreting the Organic Act of Guam only in the rare instance where we believe that such cases are unsupported by law.

2006 Guam 17 ¶ 35.

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion          Page 19 of 36

Section 1423a to subjects 'not inconsistent with the provisions of this chapter.'" *Id.* The Ninth Circuit held the law violated separation of powers principles by "tak[ing] over the entire power to establish, maintain and operate the Hospital by dictating who the governing trustees shall be." *Id.* The legislature "negate[d] the command of the Organic Act that the ultimate responsibility for the governance of the Hospital be in the Governor." *Id.*

[37]    Here, the Governor argues she has more power over quarantine than over hospitals because § 1421g(a) mandates she promulgate quarantine regulations together with her duties to establish, maintain, and operate quarantine stations and hospitals. We agree. The Governor's power over quarantine is broader than her power over hospitals. *See Baldwin*, 624 F.2d at 933-34.

[38]    Aside from *Baldwin*, the Ninth Circuit has interpreted § 1421g(b) and the governor's Organic Act powers over public education. In *Brown v. Civil Service Commission*, the Ninth Circuit interpreted the savings clause "subject to the laws of Guam" in § 1421g(a) to apply to § 1421g(b), dismissing the argument that the governor had "exclusive" power over the school system. 818 F.2d 706, 709 (9th Cir. 1987). Here, the Legislature argues the determination in *Brown* applies to the Governor's quarantine power in § 1421g(a) and urges us to find that the Governor's quarantine power is subject to concurrent legislative authority. Legislature's Br. at 13-14. But even without determining that the governor's power over public education was nonexclusive, the Ninth Circuit could have reached the same result—that the disputed executive action in *Brown* infringed on the legislature's Organic Act power because § 1421g(b) grants the governor general authority over public education. *See Brown*, 818 F.2d at 709-10. Contrastingly, the legislature has a specific grant of authority to establish a merit system for

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion　　　　Page 20 of 36

government service, and in *Brown*, the governor negated the Organic Act's specific grant of authority to the legislature by establishing a merit system for Department of Education employees. *Id.*

[39]　The Ninth Circuit concluded the same in *Nelson v. Ada*, 878 F.2d 277, 280 (9th Cir. 1989) ("In *Brown*, . . . the Organic Act of Guam itself authorized the Guam legislation in question."). There, the Ninth Circuit stated, "48 U.S.C. § 1422c(a) provided expressly for legislative establishment of a merit system under which, 'as far as practicable,' appointments and promotions were to be made." *Id.* (citing *Brown*, 818 F.2d at 709-10). These three Ninth Circuit cases stand for the proposition that in separation of powers conflicts, the government actor with the more specific grant of power in the Organic Act prevails over the actor with a general grant of power. Here, as between the Legislature and the Governor, the Governor has the more specific grant of power over quarantine in the Organic Act. Thus, Ninth Circuit precedent supports interpreting the separation of powers dynamic over quarantine as weighted toward the Governor. Besides Ninth Circuit precedent, the plain language of § 1421g(a) and the history of the Organic Act also support the determination that the Governor's quarantine policies, rules, and regulations take precedence over legislative enactments of quarantine law.[3]

### 4. The *Perez* Test

[40]　Because of her authority under 48 U.S.C.A. § 1421g(a), the Governor argues that sections 19604 and 19605 of the EHPA are inorganic and void for violating separation of powers. The Governor contends these sections encroach on her Organic Act power over quarantine by

---

[3] The Governor's executive orders, policies, rules, and regulations on quarantine are subject to the Constitution and *Jacobson* limitations. *See infra* Part IV.B (discussing standard of review for constitutional challenges).

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                Page 21 of 36

dictating quarantine rules and policy. To resolve this issue, we analyze sections 19604 and 19605 in turn under the two-part test adopted in *People v. Perez*, 1999 Guam 2. First, "whether the statutory provision prevents the accomplishment of constitutional functions," and second, "if so, whether the disruptive impact is justified by any overriding constitutional need." *Perez*, 1999 Guam 2 ¶ 17.

### a. Section 19604 does not prevent the Governor from accomplishing her constitutional functions

[41]     Section 19604 is titled "Isolation and Quarantine." 10 GCA § 19604. This section authorizes DPHSS to isolate or quarantine an individual or groups of individuals, set rules, and issue orders. *Id.* § 19604(a). This section also sets out eight conditions and principles the public health authority must follow when isolating or quarantining individuals or groups. *Id.* § 19604(b).

[42]     When viewed as general principles for DPHSS to follow when isolating or quarantining individuals, section 19604 does not impinge on the Governor's quarantine duties in § 1421g(a). Section 19604 describes quarantine and quarantine-related principles but does not establish or define procedures or methods to accomplish those goals. Put differently, section 19604 does not generate the quarantine policy itself. The Legislature is not mandating or issuing directives to DPHSS or the Governor to implement. Rather, the Legislature presents a guide for DPHSS to use when creating specific quarantine policies. Unlike in *Baldwin*, the Legislature has not "taken over the entire power" to establish, maintain, and operate quarantine stations and promulgate quarantine regulations. *See* 624 F.2d at 934-35.

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 22 of 36

[43]    The Attorney General as *amicus curiae* suggests that section 19604 is organic when read as intelligible principles—as standards that guide DPHSS rather than quarantine regulations themselves.  And the Governor conceded during oral argument that section 19604 would be organic when read as broad standards.  *See* Oral Argument at 10:25:21–10:25:39, 12:05:08–12:06:28 (May 7, 2021).  As the U.S. Supreme Court recognized, there is a long standing principle of statutory construction that "an Act of Congress ought not to be construed to violate the Constitution if any other possible construction remains available."  *NLRB v. Cath. Bishop of Chi.*, 440 U.S. 490, 500 (1979); *see also Gilmore v. California*, 220 F.3d 987, 997-98 (9th Cir. 2000).  When read as broad, general principles, section 19604 does not prevent the Governor from accomplishing her quarantine duties mandated by the Organic Act.  Because we answer the first step of the *Perez* test in the negative, we need not continue to the second step of the analysis.  We now turn to the certified question asking how section 19604 is reconciled with the quarantine powers granted to the Governor in the Organic Act.  Our answer is that by interpreting section 19604 as broad standards and general principles, the law does not impermissibly encroach on the Governor's quarantine authority.  The Legislature, therefore, has not exceeded its power, and section 19604 does not violate separation of powers.

[44]    Because we interpret section 19604 as broad standards and general principles, section 19604 does not permit statutory challenges to quarantine orders because it contains no substantive regulations, nor does it confer legal rights to individuals subject to quarantine.  Section 19604 is not intended to be used by courts as DPHSS criteria for quarantine when reviewing challenges to individual quarantine orders.

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion

Page 23 of 36

### b. Section 19605 prevents the Governor from accomplishing her constitutional functions

[45] Section 19605 is titled "Procedures for Isolation and Quarantine." 10 GCA § 19605. This section sets out procedures the public health authority must follow when isolating or quarantining individuals or groups. *Id.* The interested parties and *amicus curiae* extensively briefed the following subsections for organicity: (1) section 19605(a)(4) (requiring that the public health authority obtain a court order for isolation or quarantine beyond ten days for those quarantined without notice); (2) section 19605(b)(5) (setting standards for a court to apply when considering a petition for isolation or quarantine); (3) section 19605(b)(5)(ii) (setting requirements for the court order authorizing isolation or quarantine); and (4) section 19605(c)(1)-(2) (authorizing procedures for release or remedies for breaches under the EHPA).

[46] Unlike the general language used in section 19604 to ascribe broad principles for quarantine and isolation, section 19605 directs DPHSS to follow specific procedures to lawfully isolate or quarantine individuals.

[47] For example, after ten days of isolation or quarantine, DPHSS can continue to isolate or quarantine an individual without notice only by petition to the Superior Court. 10 GCA § 19605(a)(4). In enacting this requirement, the Legislature has predetermined the length of an initial quarantine. This legislative determination infringes on the power of the executive to execute quarantine regulations by mandating that DPHSS obtain a court order to keep an individual in quarantine past the ten-day period. The EHPA is a general statute and not specific to COVID-19, but the ongoing endorsement of the Centers for Disease Control and Prevention for a fourteen-day quarantine period highlights the legislative interference created by the ten-day

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion       Page 24 of 36

limit. *See* Req. Declaratory J. at Ex. 5 (*When to Quarantine*, Centers for Disease Control and Prevention, Dec. 10, 2020); *see also When to Quarantine*, Centers for Disease Control and Prevention (Mar. 12, 2021), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited June 29, 2021). To comply with the EHPA, DPHSS must petition a court for an order to quarantine every incoming traveler beyond ten days. This provision removes essential decision-making power from DPHSS, and thereby the Governor, over the length of quarantine during the COVID-19 pandemic.

[48]   Another example of infringement is that the court order for quarantine must "include any conditions necessary to ensure that isolation or quarantine is carried out within the stated purposes and restrictions of this Chapter." 10 GCA § 19605(b)(5)(ii)(cc). The Legislature mandates the Superior Court to enact the Legislature's quarantine policies contained within the statute and ensure DPHSS's petition complies should the two conflict. Put differently, the Superior Court must enforce the Legislature's quarantine determinations over those of DPHSS. This is legislative overreach into policy decisions over quarantine regulation that the Organic Act specifically grants to the Governor and thereby DPHSS.

[49]   The Attorney General as *amicus curiae* suggests section 19605 creates procedures for judicial review but is not a substantive regulatory provision. Att'y Gen.'s Br. at 21 (Apr. 6, 2021). We are not persuaded that section 19605 is limited to mere procedure. Section 19605 creates three substantive rights. First, the right of quarantined individuals to petition the Superior Court for release. 10 GCA § 19605(c)(1). Second, remedies for quarantined individuals for breach of quarantine conditions. 10 GCA § 19605(c)(2). And third, it provides unrepresented

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion          Page 25 of 36

individuals with legal counsel. 10 GCA § 19605(e)(1). This is not to say that these subsections are unimportant to protect civil liberties—only that they are more substantive than procedural.

[50]     As in *Baldwin*, the Governor has a specific Organic Act responsibility to establish, maintain, and operate quarantine stations and the added responsibility to promulgate quarantine regulations. *See* 48 U.S.C.A. § 1421g(a). The Legislature does not have a specific grant of authority over quarantine law but has a general police power limited to "subjects of legislation not inconsistent with the provisions of [the Organic Act]." *Id.* § 1423a. While *Baldwin* recognizes that the legislature can, within the scope of its own Organic Act authority, enact quarantine law, those enactments cannot overrule the governor's regulations. *See* 624 F.2d at 934. Section 19605, like the challenged law in *Baldwin*, negates the command of the Organic Act that quarantine authority ultimately vests in the Governor. Section 19605 intrudes too far into the Governor's power to operate quarantine stations and regulate quarantine by dictating substantive quarantine decisions. Section 19605 effectively substitutes the Legislature's policies for the Governor's and empowers the courts to do the same. This is impermissible infringement because the plain language of the Organic Act, the history of the Organic Act and the powers of the Governor, and Ninth Circuit precedent all support the Governor's position that her quarantine policies must take precedence over the Legislature's. Section 19605 therefore prevents the Governor from accomplishing her Organic Act responsibilities over quarantine.

### c. The disruptive impact of section 19605 is not justified by any overriding constitutional need

[51]     Because section 19605 prevents the Governor from accomplishing her constitutional functions, we now turn to the second step of the *Perez* test to determine whether the disruptive

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                          Page 26 of 36

impact of the law is justified by any overriding constitutional need. *See Perez*, 1999 Guam 2 ¶ 17. We have performed the "overriding constitutional need" analysis twice before. In *Villagomez-Palisson v. Superior Court (Laguana)*, 2004 Guam 13, this court held the Mandatory Medical Malpractice Arbitration Act does not violate the separation of powers doctrine because the overriding constitutional need for affordable health care justified "minimal infringement on the power of the judiciary to review the arbitrator's award." 2004 Guam 13 ¶¶ 31, 34. By contrast, we determined that Appendix C of the government of Guam's budget for fiscal year 2002 contained in Guam Public Law 26-35 violated the separation of powers doctrine because it prevented the governor from accomplishing his Organic Act appropriation duties, and the legislature did not articulate an "overriding constitutional need" to usurp that power. *In re Request of Governor Gutierrez II*, 2002 Guam 1 ¶¶ 2, 50.

[52]    The circumstances here are not analogous to those in *Villagomez-Palisson* because the disruptive impact created by section 19605 is not minimal. *See supra* Part IV.A.4.ii. And here, like in *In re Request of Governor Gutierrez II*, the legislature does not articulate any overriding constitutional need to justify the infringement created by section 19605.

[53]    The primary goal of the EPHA is to protect the health and safety of Guam during a public health emergency. *See* 10 GCA § 19102. The EPHA lists ten legislative findings; eight of those findings focus on the government's response to public health threats and exercising emergency health powers. *See id.* Of the EHPA's seven listed purposes, six describe government actions to control serious health threats. *See id.* § 19103. While the EHPA also attempts to balance individual liberties with the "ability to respond, rapidly and effectively, to potential or actual public health emergencies," the EHPA is primarily a tool to combat dangers to public health. *Id.*

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 27 of 36

§ 19102(e); *see also id.* § 19103(f) (stating a purpose of EHPA is "to ensure the needs of infected or exposed persons are properly addressed to the fullest extent possible, given the *primary goal* of controlling serious health threats" (emphasis added)).

[54]    The legislative history of the EHPA also supports this interpretation. The EHPA was passed into law in 2003. Guam Pub. L. 26-173 (Jan. 5, 2003) (codified at 10 GCA § 19101 *et seq.*). The act was passed to empower the government to respond to the spread of communicable diseases by conferring specific emergency powers to the governor and the public health authority. *Id.* § 1. The legislative intent of the EHPA states that if emergency powers are exercised, "the civil rights, liberties and needs of infected or exposed persons will be protected to the fullest extent possible, *consistent with the primary goal of controlling serious health threats*." *Id.* (emphasis added). The legislative history reiterates the primary goal of the EPHA is to protect Guam against public health threats, while a lesser goal is to protect individual rights and liberties. Furthermore, voiding section 19605 does not shut the doors of the courthouse to aggrieved quarantined individuals. Quarantined individuals can challenge a quarantine order under constitutional claims, by writ of *habeas corpus*, or under the theory that agency regulations or decisions are arbitrary, capricious, or an abuse of discretion. *See infra* Part IV.B (discussing constitutional challenges); *infra* Part IV.C (discussing court's inherent power of review). Thus, the Legislature has not articulated an overriding constitutional need to usurp and infringe on the Governor's quarantine authority under § 1421g(a).

[55]    Because the Legislature has not articulated an overriding constitutional need, we answer the certified question of whether section 19605 can be reconciled with the quarantine powers granted to the Governor in the Organic Act in the negative—it cannot be reconciled. The

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 28 of 36

Legislature has exceeded its power, and section 19605 is inorganic and void. Accordingly, the second part of the certified question is answered in the negative—individuals cannot challenge their quarantine orders under section 19605.

[56]    In summary, we hold section 19604 does not violate separation of powers doctrine. Because section 19604 contains only broad principles, it is not a basis for a statutory challenge to a quarantine order. Section 19605 is not a basis for statutory challenges to a quarantine order because it is inorganic and void for violating separation of powers doctrine.

**B. Quarantine Orders May Be Challenged on Constitutional Grounds**

[57]    We now turn to the first of two questions we initially certified: May quarantine orders be challenged on constitutional grounds? If yes, what level of scrutiny should be applied to the court's review, whether rational, intermediate, or strict?

[58]    The majority of the courts, when faced with challenges to executive emergency health measures implemented in response to the COVID-19 pandemic, apply the framework established by the United States Supreme Court in *Jacobson v. Massachusetts*, 197 U.S. 11, 25-27, 31 (1905). *See Carmichael v. Ige*, 470 F. Supp. 3d 1133, 1142 (D. Haw. 2020) (collecting cases); *Page v. Cuomo*, 478 F. Supp. 3d 355, 366 (N.D.N.Y. 2020) ("As relevant here, courts across the country have nearly uniformly relied on *Jacobson*'s framework to analyze emergency public health measures put in place to curb the spread of coronavirus."); *Prof'l Beauty Fed'n of Cal. v. Newsom*, Case No. 2:20-cv-04275-RGK-AS, 2020 WL 3056126, at *5 (C.D. Cal. June 8, 2020) (collecting cases). The standard in *Jacobson* is that challenges to public health policy statutes and regulations fail unless the policy can be shown to have no real or substantial relation to

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion          Page 29 of 36

public health or constitutes a plain, palpable invasion of plaintiff's rights. *Jacobson*, 197 U.S. at 31.

[59]    But when "the challenged restrictions are not 'neutral' and of 'general applicability,' they must satisfy 'strict scrutiny,' and this means they must be 'narrowly tailored' to serve a 'compelling' state interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quoting *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993)). "In cases implicating this form of 'strict scrutiny,' courts nearly always face an individual's claim of constitutional right pitted against the government's claim of special expertise in a matter of high importance involving public health or safety." *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (Mem.) (2021). "Stemming the spread of COVID–19 is unquestionably a compelling interest," but to pass constitutional strict scrutiny, the challenged regulation must also be "narrowly tailored." *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67.

[60]    As the global COVID-19 pandemic stretches well beyond the one-year mark, the Supreme Court has recognized that the degree of deference to the executive branch's regulations aimed at slowing the transmission of the novel coronavirus may shift as time passes and more is known about the disease. *See id.* at 70 (Gorsuch, J., concurring); *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2605 (2020) (Mem.) (Alito, J., dissenting). In his concurrence in *Roman Catholic Diocese of Brooklyn*, Justice Gorsuch takes aim at Chief Justice Robert's oft-cited concurrence in *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (Mem.) (2021), where the Chief Justice quoted *Jacobson* to justify broad deference to the decisions of elected public health officials. *See Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 70 (Gorsuch, J., concurring). Justice Gorsuch uses the passage of time, in part, to distinguish between

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 30 of 36

upholding the challenged regulation in *South Bay United Pentecostal Church* in March 2020 and

enjoining the challenged regulation in *Roman Catholic Diocese of Brooklyn* in November 2020:

> At that time, [when the concurrence in *South Bay United Pentecostal Church* was issued,] COVID had been with us, in earnest, for just three months. Now, as we round out 2020 and face the prospect of entering a second calendar year living in the pandemic's shadow, that rationale has expired according to its own terms. Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical.

*Id.*[4]

[61]     Four months earlier, Justice Alito had the same concern, stating: "[A]t the outset of an

emergency, it may be appropriate for courts to tolerate very blunt rules. . . .  [But] [a]s more

medical and scientific evidence becomes available, and as States have time to craft policies in

light of that evidence, courts should expect policies that more carefully account for constitutional

rights." *Calvary Chapel Dayton Valley*, 140 S. Ct. at 2605 (Mem.) (Alito, J., dissenting).

[62]     This is the status of Supreme Court jurisprudence about *Jacobson* deference and its

continued application.  As these rules apply to constitutional challenges to the Governor's

executive orders and regulations over quarantine including quarantine orders issued by DPHSS,

we answer the certified question in the affirmative—quarantine orders may be challenged on

constitutional grounds.  Constitutional challenges to neutral and generally applicable laws and

regulations to protect public health are analyzed under the *Jacobson* standard.  If the challenged

law or regulation is not neutral or generally applicable, it is subject to strict scrutiny.

---

[4] The Superior Court's analysis of *Jacobson* deference recognized this shift toward more probing inquiry of executive regulations as time and knowledge increase.  *See Ikei*, SP0138-20/SP0141-20 (Finds. Fact & Concl. L. at 13-15).

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                                  Page 31 of 36

## C. The Court Has Inherent Power to Review Agency Action

[63]    We now turn to the final certified question: May a court modify a quarantine order issued by DPHSS?  If yes, under what circumstances?  If yes, does such modification impinge on the Governor's powers and duties to quarantine and protect against the spread of disease and interfere with operations of the Executive Branch?

[64]    The Organic Act delineates the jurisdiction and powers of the Judiciary of Guam under 48 U.S.C.A. § 1424-1.  The Superior Court of Guam "shall have such original and appellate jurisdiction over all causes in Guam as the laws of Guam provide" except jurisdiction conferred to the District Court of Guam.  48 U.S.C.A. § 1424-1(d).  The Supreme Court of Guam is the highest court and has general appellate jurisdiction, specific original jurisdiction, and supervisory jurisdiction.  *Id.* § 1424-1(a)(1)-(7).  The Supreme Court also has "jurisdiction to issue all orders and writs in aid of its appellate, supervisory, and original jurisdiction."  *Id.* § 1424-1(a)(3).  Because the Organic Act entrusts the protection of people's rights to the judiciary, it has the distinct role of interpreting the law.  *See Marbury v. Madison*, 5 U.S. 137, 177 (1803).

[65]    The courts of Guam also have the common law power to review agency actions.  *Gutierrez v. Guam Election Comm'n*, 2011 Guam 3 ¶ 18 ("[W]e are able to review the action in the instant case under our common law authority to review agency actions.").  This court adopted "the common law position exemplified by *Bodinson Manufacturing*, that all of Guam's courts retain the general ability to review agency actions taken by agencies and to 'annul or restrain administrative action already taken which is in violation of law' when such is appropriate."  *Id.* ¶ 19 (quoting *Bodinson Mfg. Co. v. Cal. Emp. Comm'n*, 109 P.2d 935, 941 (Cal. 1941)).  The power is rooted in the court's jurisdiction and authority to issue writs, *see Bodinson Mfg.*, 109

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 32 of 36

P.2d at 941, which are granted to both the Superior Court and the Supreme Court of Guam, *see* 48 U.S.C.A. § 1424-1(a)(3), (d); *see also* 7 GCA § 31401 (2005). Thus, the Superior Court and the Supreme Court have the common law power to review agency actions and annul or restrain any agency action in violation of the law.

[66]    Other jurisdictions refer to the court's "inherent" power or authority to review administrative decisions for arbitrariness or capriciousness. *See Truitt v. Bd. of Pub. Works*, 221 A.2d 370, 380 (Md. 1966) ("This Court has consistently exercised its inherent power to review actions of administrative agencies alleged to be arbitrary or capricious even if there is no express statutory authority for such review."); *Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council (EFSEC)*, 197 P.3d 1153, 1163 (Wash. 2008) (en banc) ("While the constitution does not expressly provide for appellate jurisdiction of agency action in superior court, this court has recognized that the superior courts have inherent authority to review administrative decisions for arbitrary and capricious action under the discretionary writ of certiorari."); *In re Wright*, 46 S.E.2d 696, 698 (N.C. 1948) ("The court has inherent authority to review the discretionary action of any administrative agency, whenever such action affects personal or property rights, upon a prima facie showing, by petition for a writ of certiorari, that such agency has acted arbitrarily, capriciously, or in disregard of law.").

[67]    Given the specific grant of power and authority to the Governor in the Organic Act, her quarantine policies and those implemented by DPHSS, as the Public Health Authority through the EHPA, are afforded deference. Most courts across the county recognize that in times of public health emergencies, the judgments of politically accountable officials are granted deference. *See Marshall v. United States*, 414 U.S. 417, 427 (1974) (stating that when those

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                  Page 33 of 36

officials "undertake[] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad"); *see also Bayley's Campground Inc. v. Mills*, 463 F. Supp. 3d 22,  32 (D. Me. 2020), *recons. denied*, No. 2:20-cv-00176-LEW, 2020 WL 3037252 (D. Me. June 5, 2020), *and aff'd*, 985 F.3d 153 (1st Cir. 2021) ("[W]hen one weighs competing interests in the balance, the presence of a major public health crises is a very heavy weight indeed and scientific uncertainties about the best response will afford the state some additional leeway to err on the side of caution . . . ."); *Carmichael*, 470 F. Supp. 3d at 1143 ("[T]he judiciary may not 'second-guess the state's policy choices in crafting emergency public health measures.'" (quoting *In re Rutledge*, 956 F.3d 1018, 1029 (8th Cir. 2020))); *Chambless Enters., LLC v. Redfield*, --- F. Supp. 3d ---, Civil Action No. 3:20-cv-01455, 2020 WL 7588849, at \*15 (W.D. La. Dec. 22, 2020) (collecting cases).

[68]     The courts have their role to play in our system of checks and balances even during a public health crisis.  "As the Supreme Court also stated in *Jacobson*, courts have the authority to intervene when political leaders attempting to protect the public against an epidemic act in 'an arbitrary, unreasonable manner' or in a way that goes 'far beyond what [is] reasonably necessary.'" *Elkhorn Baptist Church v. Brown*, 466 P.3d 30, 35 (Or. 2020) (quoting *Jacobson*, 197 U.S. at 28).  The Constitution "entrusts the protection of the people's rights to the Judiciary . . . .  Deference, though broad, has its limits." *S. Bay United Pentecostal Church*, 141 S. Ct. at 717 (Roberts, C.J., concurring).

[69]     Based on these principles, the jurisdiction and authority to issue writs provide the courts with inherent power to review agency regulations and agency decisions for arbitrariness, capriciousness, or abuse of discretion.  We hold that even without a statutory cause of action

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion               Page 34 of 36

within the EHPA, the courts of Guam have the inherent common law power to review the agency actions of DPHSS acting as the Public Health Authority.

[70] The Governor's Organic Act power and authority over quarantine are broad, but not absolute. The Governor conceded in oral argument that her interpretation of her Organic Act powers over quarantine does not place her actions above the law or beyond the reach of the courts. *See* Oral Argument at 10:41:08–10:41:20, 12:07:01–12:07:20 (May 7, 2021). Her concession is apt. Section 1421g(a) begins with the phrase "subject to the laws of Guam." 48 U.S.C.A. § 1421g(a). And because "[a] statute should be construed to give effect to all of its provisions so that no part would be superfluous or insignificant," *Macris v. Richardson*, 2010 Guam 6 ¶ 15, the judicial branch must ensure other branches of government do not act beyond the law. *See also Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879) ("We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.").

[71] The courts have inherent power to review quarantine regulations and orders issued by DPHSS for arbitrariness, capriciousness, or abuse of discretion. This standard of review reflects the deference to elected officials and the specific grant in the Organic Act to promulgate quarantine regulations in times of public health crises and does not encroach on the Governor's Organic Act duties.

[72] The court's power to review and order compliance with the law is not a "modification" of a DPHSS order because the court is not revising or editing a DPHSS order or substituting its policy decisions into a DPHSS order. The exercise of the court's inherent power of review over

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion                    Page 35 of 36

agency actions is a judicial function and does not itself generate policy or regulations. Judicial review over the actions of DPHSS therefore does not impinge on the Governor's powers and duties under 48 U.S.C.A. § 1421g(a). *See Marbury*, 5 U.S. at 177.

## V. CONCLUSION

[73]    In the midst of the global COVID-19 pandemic, the Governor filed a Request for Declaratory Judgment to interpret her quarantine powers in the Organic Act relative to the scope of judicial review over statutory challenges to quarantine arguably contained within the EHPA. After diligent and extensive briefing and vigorous advocacy on behalf of the Governor, PDSC, DPHSS, the Legislature, and the Attorney General of Guam, we answer the certified questions as follows:

[74]    Section 19604 does not violate separation of powers doctrine and is a valid exercise of legislative power. Section 19605 is inorganic and void because it violates separation of powers doctrine by encroaching on the Governor's Organic Act authority over quarantine under 48 U.S.C.A. § 1421g(a). There are no explicit statutory challenges to quarantine orders in the EHPA because section 19604 does not create a substantive right. Rather, section 19604 is a set of broad principles enacted to guide the Governor and DPHSS in promulgating quarantine policy and regulation.

[75]    Quarantine orders may be challenged on constitutional grounds. Neutral and generally applicable laws and regulations to protect public health are analyzed under the *Jacobson* standard. If a challenged law or regulation is not neutral or generally applicable, it is subject to strict scrutiny.

*In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan,*
*Relative to the Power of the Executive Branch to Establish, Maintain,*
*and Operate Quarantine Facilities in Guam and to Promulgate*
*Quarantine and Sanitation Regulations for the Protection of Guam*
*Against the Importation and Spread of Disease*, 2021 Guam 6, Opinion          Page 36 of 36

**[76]**     Our courts have the inherent power to review agency actions and order compliance with the law.  Exercising this power does not "modify" a DPHSS quarantine order and does not encroach on the Governor's powers and duties under 48 U.S.C.A. § 1421g(a).


| /s/ | /s/ |
|---|---|
| ROBERT J. TORRES | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
F. PHILIP CARBULLIDO
Chief Justice